555 A.2d 1304

**Janice A. NEFF, Individually and as Executrix of the Estate of William L. Neff, Appellant,**

**v.**

**William LASSO, Jr. and G. Thomas Pasquariello, T/A Pasquariello's Auto Shop Appellees.**

Superior Court of Pennsylvania.

Argued June 28, 1988.

Filed March 13, 1989.

488

James T. Huber, Allentown, for appellant.

James D. Rawlings, II, Bethlehem, for Lasso, appellee.

William P. Exaros, Bethlehem, for Pasquariello, appellee.

Before TAMILIA, KELLY and HESTER, JJ.

KELLY, Judge:

The sole issue on appeal is whether a wife may recover against a tortfeasor for serious emotional distress caused by shock and fear for her husband who was fatally injured in an automobile accident, where the wife visually observed her husband's vehicle being followed by defendant's speeding vehicle, heard the impact between her husband's pickup and defendant's automobile and arrived on the scene immediately thereafter to find her husband lying unconscious. For the reasons which follow, we find that appellant has alleged sufficient facts to state a cause of action. Accord-

ingly, we reverse the order of the trial court sustaining defendant's preliminary objections in the nature of a demurrer, reinstate appellant's cause of action, and remand for proceedings consistent with this opinion.

Appellant, Janice E. Neff, appeals from the order granting the preliminary objections in the nature of a demurrer made by appellees, William Lasso, Jr. and G. Thomas Pasquariello, t/a Pasquariello's Auto Shop, dismissing appellant's claim for negligent infliction of emotional distress.

## I. STANDARD OF REVIEW

■■■ Our standard of review of an order granting preliminary objections in the nature of a demurrer was set forth in *Vattimo v. Lower Bucks Hosp., Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983) as follows:

All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true [for the purpose of this review.] The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

502 Pa. at 244, 465 A.2d at 1232–33 (citations omitted); *see also Mahoney v. Furches*, 503 Pa. 60, 66, 468 A.2d 458, 461–62 (1983). In reviewing the grant of a demurrer we are not bound by the inferences drawn by the trial court nor are we bound by its conclusions of law. *See Drug House Inc. v. Keystone Bank*, 272 Pa.Super. 130, 132, 414 A.2d 704, 705 (1979). Moreover, the novelty of a claim or theory, alone, does not compel affirmance of a demurrer. *See Sinn v. Burd*, 486 Pa. 146, 150, 404 A.2d 672, 674 (1979); *Papieves v. Lawrence*, 437 Pa. 373, 376–77, 263 A.2d 118, 120 (1970); *Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301 (1988).

In light of our standard of review, the following is a summary of the relevant factual history of this case as stated in appellant's complaint. At approximately 3:55 p.m.

on May 17, 1986, the decedent, William L. Neff, was driving his Chevrolet pickup truck on Allen Drive directly in front of his home. Appellee, William Lasso, Jr., traveling at an excessive rate of speed, followed decedent down Allen Drive. As decedent was attempting to make a left-hand turn into his driveway, appellee attempted to pass him on the left-hand side in a no passing zone. In doing so, appellee struck the rear left portion of decedent's pickup fatally injuring the decedent.

At the time of these events, appellant, Janice A. Neff, was standing in her home looking out her kitchen window. Appellant observed her husband arriving home and observed appellee following directly behind him at an excessive rate of speed. Appellant heard an impact between two vehicles.[1] Appellant arrived at the accident scene immediately thereafter and found her husband lying unconscious on their front lawn. As a result, appellant suffered severe emotional distress.

■ Appellant, in her capacity as executrix of her husband's estate, filed a wrongful death and survival action. She also filed a separate claim on her own behalf for negligent infliction of emotional distress based upon the injuries she incurred as a result of appellee's negligence. Appellees, William Lasso and G. Thomas Pasquariello, filed preliminary objections in the nature of a demurrer in which they argued that appellant had failed to allege a cause of action for negligent infliction of emotional distress where she did not visually observe the accident. In her response, appellant asserted that seeing the impact was unnecessary and that she need only have had a contemporaneous sensory perception of the accident. The Honorable Richard D. Grifo concluded that "contemporaneous observance" of the accident as required by our Supreme Court's decision in *Sinn v. Burd, supra,* implied sight only and not hearing, and therefore he sustained the preliminary objections and

---

1. A review of the record does not reveal the reason why appellant did not visually witness the accident. We do not know whether something obstructed her view or whether appellant turned her eyes away immediately prior to impact.

dismissed Mrs. Neff's separate claim for negligent infliction of emotional distress. This timely appeal followed.[2]

## II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Initially, we find it appropriate to briefly review the development of the cause of action for negligent infliction of emotional distress. In doing so, we will consider the development of the cause of action generally and then its development in Pennsylvania particularly.

### A. EVOLUTION OF THE TORT OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS: GENERALLY

■ Originally, courts allowed plaintiffs to maintain a cause of action for emotional distress only if certain limiting and qualifying factors were present. Early cases denied plaintiff's recovery unless the plaintiff had suffered a contemporaneous physical injury or impact accompanied by mental distress. A majority of courts gradually departed from the impact rule and adopted a rule allowing recovery for psychic injury where the plaintiff was in the physical zone of danger and was in fear for his own safety. This was known as the "zone of danger" rule. *See* W.P. Keeton, *Prosser & Keeton on Torts* (5th Ed.1984) at 363; Note, *The Next Best Thing to Being There?: Foreseeability of Media–Assisted Bystanders*, 17 S.W.U.L.Rev. 65 (1987); Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury*, 36 U.Fla.L.R. 333 (1984); Note, *Administering the Tort of Negligent Infliction of Emotional Distress*, 4 Cardozo L.Rev. 487 (1983); Note, *Negligent Infliction of Emotional Distress: Keeping Dillon in Bounds*, 37 Wash. & Lee L.Rev. 1235 (1980); Comment, *Negligently Inflicted*

---

**2.** Appellant's appeal from the order granting appellees' preliminary objections is proper because the effect of the order is to preclude appellant from pursuing the merits of a separate and distinct cause of action. *Gordon v. Pennsylvania Blue Shield*, 378 Pa.Super. 256, 548 A.2d 600 (1988); *Hardy v. Pennock Insurance Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471 (1987).

*Mental Distress: The Case for an Independent Tort,* 59 Geo.L.J. 1237 (1971).

In 1968, the California Supreme Court rendered the landmark decision of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), which lowered the bystander barrier by permitting a mother, who was not within the zone of danger, to recover for psychic injury caused by witnessing her daughter's negligently caused death. The court adopted the position that liability for the negligent infliction of emotional distress would depend upon whether such injuries were foreseeable to the defendant at the time of the accident. The *Dillon* court set forth three factors—plaintiff's proximity to the decedent, the directness of her observance of the accident, and the closeness of her relationship to the accident victim—as guidelines for future courts to determine whether psychic injury was reasonably foreseeable. The California Supreme Court emphasized, however, that the reasonableness of imposing liability was ultimately a factual determination which is made on a case by case basis. 69 Cal.Rptr. at 80, 441 P.2d at 920. Thus, the factors were not to be applied formalistically to bar arguably valid claims. *See Ochoa v. Superior Court,* 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985). A majority of courts now recognize a cause of action based upon *Dillon*'s three prong test, though some variety exists between courts recognizing the *Dillon* test with regard to the precise parameters of the cause of action. *See Witnessing Injury—Damages—Mental Anguish,* 5 A.L.R. 4th 833 (1981 & 1988 Supp.); *see also* Note, *The Next Best Thing to Being There?: Foreseeability of Media—Assisted Bystanders, supra.*

## B.   EVOLUTION IN PENNSYLVANIA

In Pennsylvania, the tort of negligent infliction of emotional distress has followed a similar course of evolution. For decades, our Supreme Court uniformly applied the "impact rule," which barred recovery for fright, nervous shock or mental or emotional distress unless it was

accompanied by a physical injury or impact upon the complaining party. *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 191–92, 527 A.2d 988, 992 (1987) (collecting cases). However, in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), our Supreme Court abandoned the requirement of physical impact as a precondition to recovery where the plaintiff was in personal danger of physical impact from the negligent force and actually feared for his own safety.

Finally, in *Sinn v. Burd, supra,* our Supreme Court was presented with the question of whether to permit recovery for emotional distress by a plaintiff who, while outside the zone of danger, actually witnessed the accident causing serious injury to a close relative. In *Sinn,* the deceased child and her sister were standing by the family's mailbox located alongside the roadway. An automobile operated by the defendant struck the child and hurled her through the air, causing injuries which resulted in her death. The plaintiff-mother witnessed the accident from a position near the front door of her home. Our Supreme Court abandoned the zone of danger requirement, and permitted recovery for emotional distress by the plaintiff-mother who, while outside the zone of danger, actually witnessed the accident causing serious injury to her daughter.

In abandoning the "zone of danger" rule, the Court found that the *Niederman* test was unduly restrictive and prevented recovery in instances where there was no sound policy basis supporting such a result. The Court reasoned that the emotional impact upon a parent who witnesses the death of a child was "as great and as legitimate" as the apprehension of fear of impact under the zone of danger. 404 A.2d at 677. The Court explained:

> Applications of the zone of danger test to situations where the death or serious injury of a child is witnessed by a parent creates the very evil that the test was designed to eliminate, i.e., arbitrariness. It would bar recovery depending upon the position of the plaintiff at the time of the event, and ignores that the emotional

impact was most probably influenced by the event witnessed—serious injury to or death of the child—rather than the plaintiff's awareness of personal exposure to danger.

404 A.2d at 678 (footnote omitted).

■ The Court adopted the *Dillon* parameters for determining whether the infliction of emotional distress was reasonably foreseeable. Thus, a cause of action for negligent infliction of emotional distress exists in Pennsylvania when the following criteria are met:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence;

(3) Whether plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Id.* 404 A.2d at 685, *quoting Dillon v. Legg, supra,* 68 Cal.2d at 740–41, 69 Cal.Rptr. at 80, 441 P.2d at 920. Applying the *Dillon* foreseeability requirements in *Sinn,* our Supreme Court found that the contemporaneous observance of the accident was the proximate cause of the plaintiff-mother's emotional injuries and therefore a cause of action should be recognized despite the fact that the plaintiff-mother was not within the zone of danger.

In the instant case, there is no question that appellant's pleading adequately satisfied requirements one and three. The question here is whether appellant has pled facts sufficient to meet the requirement that appellant's shock resulted from a "direct emotional impact from a sensory and contemporaneous observance of the accident." Specifically, we must determine whether visual awareness of the setting, simultaneous auditory perception of the impact, and immediate visual observation of the results of the impact

seconds later is sufficient to constitute a "sensory and contemporaneous observance" within the meaning of those terms as used in *Sinn*.

### III. SENSORY AND CONTEMPORANEOUS OBSERVANCE

■ Appellant argues that to require a visual observance of the moment of impact unrealistically elevates sight above the other senses and misperceives the distinction drawn in *Sinn* and its progeny. Appellant maintains that the cases which have considered the parameters of the "sensory and contemporaneous observation" requirement have not drawn the line between sight and hearing but have focused on whether the emotional blow was direct and immediate rather than distant and indirect. Thus, appellant asserts, for a cause of action to exist, the prospective plaintiff must be a percipient witness to the traumatic event.[3] For the reasons which follow, we agree.

### A. PENNSYLVANIA SUPREME COURT DECISIONS

Following its decision in *Sinn,* our Supreme Court has been called upon three times to consider the parameters for pleading a cause of action for negligent infliction of emotional distress; specifically the contemporaneous observance requirement. *Brooks v. Decker,* 512 Pa. 365, 516 A.2d 1380 (1986); *Mazzagatti v. Everingham,* 512 Pa. 266, 516 A.2d 672 (1986); and *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981). In each case, the Court concluded that the plaintiff had failed to allege that his shock resulted from a "sensory and contemporaneous observance" of the accident.

In *Yandrich,* the Court denied recovery to a plaintiff-father who did not witness the accident and who did not

---

**3.** Percipient is defined as: "capable of or characterized by perception." Perception is defined as: "1. obs: consciousness; 2. a: a result of perceiving: OBSERVATION; b: a mental image: CONCEPT: 3. a: awareness of the elements of environment through physical sensation <color≳; b: physical sensation interpreted in the light of experience; 4. a: a quick, acute, and intuitive cognition: APPRECIATION: b: a capacity of comprehension." *Webster's Ninth New Collegiate Dictionary* (1986) at 872.

arrive at the accident scene until after his son had been taken to the hospital. The father's emotional injuries resulted from seeing his son at the hospital and remaining there with him until he died five days later. Our Supreme Court sustained the grant of demurrer in an Opinion in Support of Affirmance.[4] The Court held that the father's pleadings had not satisfied the *Sinn* criteria and, therefore, his emotional distress was not foreseeable as a matter of law. 433 A.2d at 461 (Wilkinson, J.). In a separate Opinion in Support of Affirmance, Justice Nix (now Chief Justice), in addressing the question of whether the policies underlying its decision in *Sinn* would support the extension of liability when the plaintiff had been notified of the accident, gave the following explanation for the denial of recovery:

> Where a parent or close blood relative actually witnesses a traumatic serious injury to a loved one, we expressed in *Sinn* that the emotional impact reverberating from that event was at least as potent as that which flowed from the personal exposure to danger under the zone of danger theory articulated in *Niederman.*
>
> In *Sinn* we also recognized the traditional view that solatium was not compensable. In *Sinn* we noted that damages were not to be awarded to allay the grief resulting from the loss, but rather to compensate for the shock of actually witnessing the event.

433 A.2d at 462–63 (Nix, J.) (footnote omitted). Recovery was denied because the plaintiff had been informed of the event by a third person and thus had not suffered an emotional injury resulting from a direct and contemporaneous sensory experience of the event itself.

In *Mazzagatti*, the Court considered whether a cause of action exists where a close relative does not observe the accident itself, but instead arrives at the scene of the

---

**4.** *Yandrich v. Radic, supra,* affirmed a Superior Court order by an equally divided Supreme Court. Justice Wilkinson filed an Opinion in Support of Affirmance in which Justice Roberts joined. Justice Nix (now Chief Justice) also filed an Opinion in Support of Affirmance. Justice Flaherty filed an Opinion in Support of Reversal joined by Justice Larsen and Justice Kauffman.

accident and observes the victim a few minutes afterwards.[5] The Court declined to extend liability reasoning that any other interpretation of the *Sinn* foreseeability test would ignore several basic principles of tort liability. "These principles, which require that the defendant's breach of a duty of care proximately cause the plaintiff's injury, have established the jurisprudential concept that at some point along the causal chain, the passage of time and the span of distance mandate the cut-off point for liability." 516 A.2d at 676. (Citations omitted).

The Court in *Mazzagatti* determined that the critical element for establishing such liability was the contemporaneous observance of the injury to the close relative. Our Supreme Court explained that:

We believe that where the close relative is not present at the scene of the accident, but instead learns of the accident from a third party, the close relative's *prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene. By contrast, the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system.* The negligent tortfeasor inflicts upon this bystander a injury separate and apart from the injury to the victim. *See Sinn v. Burd, supra,* 486 Pa. at 158–62, 404 A.2d at 678–80 ... Where, as here, the plaintiff has no contemporaneous sensory perception of the injury, the emotional distress results more from the particular emotional makeup of the plaintiff rather than from the nature of defendant's actions.

516 A.2d at 679. (Emphasis added). Based upon the above reasoning, the Court in *Mazzagatti* held that a plaintiff who does not experience a contemporaneous observance of the injury to a close relative does not state a cause of action for

5. At the time of the accident, Mrs. Mazzagatti was at work, approximately one mile away. She received a telephone call immediately after the collision informing her that her daughter had been involved in an automobile accident. Mrs. Mazzagatti arrived at the scene of the accident a few minutes afterwards.

the negligent infliction of emotional distress under the parameters enunciated in *Sinn v. Burd, supra.*

Similarly, in *Brooks v. Decker, supra,* our Supreme Court denied recovery to a plaintiff-father who did not witness the accident. In *Brooks,* as the plaintiff drove towards his home an ambulance passed him and turned onto his street. The ambulance stopped shortly thereafter where a crowd of people had gathered. Plaintiff, who followed the ambulance, noticed a bicycle that belonged to his son on the ground. As plaintiff exited his vehicle to investigate, he discovered his son had been the victim of an automobile accident. Relying upon its reasoning in *Mazzagatti,* our Supreme Court held in *Brooks* that a father who alleged that he sustained an actual injury upon seeing the broken body of his son who had been struck by an automobile while riding a bicycle, but who failed to allege that he witnessed the accident or his son's injuries, failed to state a cause of action for negligent infliction of emotional distress. 516 A.2d at 1383.

A comparison of the facts alleged in the instant case with the facts as alleged in *Sinn, Yandrich, Mazzagatti,* and *Brooks,* discloses that we are dealing with a case that falls between the facts in *Sinn,* which involved the actual visual observance of the moment of impact and those in *Yandrich, Mazzagatti,* and *Brooks,* which involved no comtemporaneous observance of the impact, visual or otherwise. Although appellant did not visually witness the impact, she experienced a contemporaneous sensory awareness of the accident and its personal import based upon her visual and aural observations before, during, and after the moment of impact. Thus, we must determine whether our Supreme Court in abandoning the "zone of danger" rule intended to limit relief for negligent infliction of emotional distress to those plaintiffs who visually witnessed the impact.

Our reading of *Sinn, Yandrich, Mazzagatti,* and *Brooks* leads us to conclude that our Supreme Court, in considering the parameters of the "sensory and contemporaneous observance" requirement, focused upon whether the emotional

shock was immediate and direct rather than distant and indirect, and not upon the sense employed in perceiving the accident. We concede however, these decisions are inconclusive for purposes of deciding the narrow question before us. Consequently, we look to persuasive authority of non-binding precedent from this and other jurisdictions to determine whether actual *visual* observance ought to be deemed necessary to satisfy the "sensory and contemporaneous observance" requirement.

## B. PENNSYLVANIA PERSUASIVE AUTHORITY

Our research discloses no Pennsylvania appellate court cases addressing the narrow question of whether visual perception of the impact is necessary to satisfy the *Sinn* requirement that the "shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident." Our research has, however, disclosed two Pennsylvania trial court decisions which allowed the plaintiffs to recover for emotional injury where the plaintiffs *heard* the impact and immediately thereafter *visually* observed the injured relative. *Kratzer v. Unger*, 17 Pa. D & C 3d 771 (1981); *Anfuso v. Smith*, 15 Pa. D & C 3d 389 (1980).

In *Kratzer*, the plaintiff-foster mother heard a loud thump and turned to see that her foster son had been struck by the defendant's automobile and was lying unconscious in the road. Relying on *Sinn*, the defendant argued that the plaintiff had failed to state a cause of action where the perception of the accident's happening was auditory rather than visual. The trial court disagreed and found that a cause of action for negligent infliction of emotional distress existed. The trial court reasoned that:

Clearly our Supreme Court focused upon the first-hand observation by plaintiff of her son's fatal accident in *Sinn v. Burd*. However, *we cannot believe that the court intended thereby to limit recovery to those situations where the shocking event might manifest itself through the eyesight of the witness, to the exclusion of*

*other types of sensory observation.* The important element is the immediate and direct awareness of what has occurred, and the appellate court's concern was to limit recovery to persons 'on the scene' when such a tragedy happens, as opposed to those who might learn of it from someone else who had been present. There is no rational reason to believe that what an eyewitness sees will be any more or less shocking than what an 'earwitness' hears.

17 Pa. D & C 3d at 773. (Emphasis added).

In *Anfuso,* the plaintiff-mother observed her daughter shortly before the child was struck by an automobile, heard the impact, and witnessed the accident scene immediately thereafter. The trial court rejected the contention that visual perception of the impact was the only sensory observance sufficient to give rise to a cause of action and concluded that the facts as pleaded established that the plaintiff-mother was a "percipient witness" to the impact. Finding no basis in logic or fairness for rejecting the claim, the trial court concluded that the "sensory and contemporaneous observance" requirement was satisfied by the pleading that the plaintiff-mother saw her child immediately prior to impact, heard the squeal of tires and the impact with the child, and witnessed the accident scene immediately afterwards.

In addition to the above trial court decisions, we note that the District Court for the Eastern District of Pennsylvania addressed this precise question in *Bliss v. Allentown Public Library,* 497 F.Supp. 487 (E.D.Pa.1980). Applying its construction of Pennsylvania's law, the Eastern District Court held that a complaint alleging that the mother heard a metal sculpture fall upon her child and turned to see her child lying on the floor with a statute positioned across the child's arm stated a cause of action for negligent infliction of emotional harm, even though the mother was not looking at the child at the exact moment of impact. The court reasoned that to deny the mother's claim because of the position of her eyes at the split second that the accident

occurred would ignore the reality that the entire incident produced the emotional injury for which she sought redress. The court concluded that requiring a direct visual perception would defeat the policy underlying *Sinn*. The court held that the mother had identified herself sufficiently as a "percipient witness" to state a cause of action for negligent infliction of emotional harm. 497 F.Supp. at 489.

## C. OTHER JURISDICTIONS

This particular question has also been addressed by the appellate courts of California, Florida, New Hampshire and Texas. *Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977); *Champion v. Gray*, 478 So.2d 17 (Fla.1985); *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979); *Bedgood v. Madalin*, 589 S.W.2d 797 (Tex.Civ.App. 1979). A review of these cases reveals that the requirement of actual observance of the event has been construed since *Dillon* to include sensory perception of the accident generally and not strict *visual* observance of the event. *Versland v. Caron Transport*, 206 Mont. 313, 317, 671 P.2d 583, 586 (1983). *See also Prosser & Keeton*, at 366 n. 74 (1984 & 1988 Supp.).

In *Krouse v. Graham, supra*, the plaintiff was seated in the driver's seat of a parked car. His wife was removing groceries from the back seat when the defendant driver smashed into the car, killing plaintiff's wife. In response to plaintiff's claim for emotional injury under *Dillon*, the court specifically held that direct impact from a sensory and contemporaneous observance did not require visual perception of the impact causing the injury. 137 Cal.Rptr. at 872, 562 P.2d at 1031.[6] The court concluded that the plaintiff must have perceived that his wife was struck because "he knew her position an instant before the impact, observed the defendant's vehicle approach ... and realized that defendant's car must have struck her." 137 Cal.Rptr. at 872,

---

**6.** The California Supreme Court confirmed the propriety of the expression in *Archibald v. Braverman*, 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969), that the *Dillon* requirements of sensory and contemporaneous observance of the accident does not require visual observance.

562 P.2d at 1031. Thus, he was deemed a percipient witness and recovery for negligent infliction of emotional distress was granted. *Compare Parsons v. Superior Court*, 81 Cal.App.3d 506, 146 Cal.Rptr. 495 (1978) (recovery denied because plaintiff neither "saw, heard, or otherwise sensorily perceived the injury-producing event").

In *Champion v. Gray, supra*, the Florida Supreme Court adopted the *Dillon* foreseeability requirements and allowed the mother to recover after she heard the accident, came immediately to the accident scene, and, upon seeing the body of her daughter who had been hit by a drunk driver, suffered such severe emotional distress and shock that she collapsed and died. In reaching its conclusion, the court reasoned that the price of death or significant discernible physical injury, when caused by psychological trauma resulting from negligent injury imposed upon a close family member within the *sensory perception of the physically injured person*, is too great a harm to require direct physical contact before a cause of action exists. The injury is foreseeable where the physically injured party is directly involved in this event which caused the original injury. Therefore, if the plaintiff "sees it, hears it, or arrives upon the scene while the injured party is still there, the person is likely involved." 478 So.2d at 20. We note that the last contingency is concededly beyond the scope of recovery which our Supreme Court is willing to recognize.

In *Corso v. Merrill, supra*, the New Hampshire Supreme Court adopted the *Dillon* foreseeability requirements and allowed the plaintiff-mother to recover after she heard a thud, looked outside and saw her daughter lying in the street. The court stated that in order to prove the injury was foreseeable the emotional injury must be directly attributable to the emotional impact of the plaintiff's *observations or contemporaneous sensory perception of the accident and immediate viewing of the accident.* 406 A.2d at 306. (Emphasis added). To ensure against unreasonable and unlimited liability the New Hampshire Supreme Court indicated that they would require a relatively close connec-

tion in both time and geography between the negligent act and the resulting injury. The court reasoned that, such requirements were consistent with general principles of liability based upon reasonable foreseeability. The court concluded that Mrs. Corso's auditory perceptions from inside the house followed by her immediate observance of the accident scene met the test of reasonable foreseeability and stated a cause of action for negligent infliction of emotional distress.[7] *Accord Oberreuter v. Orion Industries, Inc.,* 342 N.W.2d 492 (Iowa 1984) (recovery for negligent infliction of emotional distress is intended to compensate the plaintiff for emotional trauma caused by plaintiff's "visceral participation" in the event).

In *Bedgood v. Madalin, supra,* a cause of action for negligent infliction of emotional distress was held to exist where the father who was located 100 feet from the place where his eleven year old son was struck by an automobile, heard the impact, heard a loud scream by his son, reached the scene within less than one minute after impact, and found the boy apparently unconscious and bleeding profusely from a torn artery. The court concluded that the circumstances were sufficient to permit a finding that tortfeasors could have reasonably foreseen that their negligence would cause mental anguish. *Cf. Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.1978) (allowing minor plaintiff to recover for injuries sustained by her as a result of shock and trauma in witnessing efforts to revive her infant sister after she was removed from a swimming pool was appropriate where plaintiff was located near the scene of the accident, the shock resulted from a direct emotional impact on plaintiff from a contemporaneous perception of the accident).

Finally, it appears that English courts also recognize a cause of action for negligent infliction of emotional distress where there's an immediate sensory observance without

---

7. The New Hampshire Supreme Court also concluded that plaintiff-father stated a cause of action where he heard his wife scream immediately after the accident that their daughter was run over, and that he immediately went to the aid of his daughter.

actual visual observance of the impact. For example, in *Hambrook v. Stokes Brothers, Ltd.*, 41 The Times L.R. 125, 1 K.B. 141 (1925), a mother was allowed to recover for emotional injuries she sustained not by reason of what she saw or what she was told by any bystander but on the assumption that the shock was caused by her own sight of the lorry, running uncontrolled down the hill, and knowing her children were in the lorry's path. Hale, *The Lot of Negligent Frightener*, 22 B.U.L.L.Rev. 508, 512 (1942).

Our analysis of the foregoing persuasive authorities convinces us that the "sensory and contemporaneous observance" requirement should not be limited to visual observance. Well reasoned opinions in this and other jurisdictions persuade us that the logical and practical focus of the second prong of the *Dillon* test should be whether the observance was direct and immediate as opposed to indirect and removed and not upon the particular sensory vehicle which gave rise to the awareness of the event and its personal import. It is the immediate sensory awareness and not the source (*i.e.* visual, tactile, aural, gustatory or olfactory), of the awareness which must control.

## IV.   APPLICATION

With these principles in mind, we now consider the question of whether appellant's "shock resulted from a direct emotional impact upon her from a sensory and contemporaneous observance of the accident," keeping in mind that our focus is on the degree of appellant's awareness of the negligent act rather than the source of her awareness. A review of the record discloses that appellant has pled that she was standing in her kitchen looking out towards the street. She observed her husband's pickup traveling down the street followed by Mr. Lasso, who was operating his automobile at an excessive rate of speed. Although she no longer could see the two vehicles, appellant heard a collision and immediately realized her husband's pickup was involved in the collision. She arrived on the scene immediately thereafter to find her husband lying unconscious on their

front lawn.  As a result, she suffered a severe and emotional shock for which she now seeks recovery.  We find that appellant has pled sufficient facts to state a claim that she was a percipient witness and her injuries were foreseeable under the circumstances.

It may be true that unlike visual observance, aural awareness may rarely, standing alone, give rise to a sufficient awareness of the nature and import of the event to cause severe emotional injury.  However, aural perception (hearing the impact) when considered together with prior and subsequent visual observance (seeing Mr. Lasso's car speeding behind her husband's pickup and seeing her husband lying unconscious immediately after the impact), may produce a full, direct, and immediate awareness of the nature and import of the negligent conduct which may foreseeably result in emotional injury, and which is not buffered by the intervention of a third party or the effects of the removal of the awareness temporally or geographically from the impact and its consequences.  To deny appellant's claim solely because she did not see the precise moment of the impact would ignore the plain reality that the *entire incident* produced the emotional injury for which the plaintiff seeks redress, and would be contrary to the very policy and purpose of the Court in *Sinn* when it abandoned the "zone of danger" rule, *i.e.* eliminating arbitrariness.  Therefore, we conclude that "sensory and contemporaneous observance" is not limited to visual sensory perception but properly includes an aural sensory awareness as well.  Succinctly, it is not the source of the awareness, rather, it is the degree of the awareness arising from all of the individual's senses and memory which must be determinative of whether the plaintiff's emotional shock resulted from a "sensory and contemporaneous observance" of the accident.

## CONCLUSION

Having found that appellee has alleged a claim for negligent infliction of emotional distress, we reverse the order of

the trial court, reinstate appellant's claim and remand for trial. Jurisdiction relinquished.