## Friend v. Saldana

C.P. of Jefferson County, no. 448-1993 C.D.

*Andrew Horvath* and *Neil R. Rosen,* for plaintiffs.
*Daniel P. Stefko* and *Jennifer M. Kitschler,* for defendant.

HENRY, *P.J.,* February 13, 1995—Currently before the court are preliminary objections to the plaintiffs' complaint filed by defendant Saldana. These preliminary objections are in the form of a motion to strike Count II of the complaint and a demurrer or motion to strike Count VI of the complaint. For the foregoing reasons, we would grant the motion to strike Count II of the complaint and also grant the demurrer to Count VI of the complaint.

This case arises out of the alleged negligent conduct of defendant Dr. Saldana. The complaint alleges that Dr. Saldana on numerous occasions injected the plaintiff Tationia Friend with Demerol. The complaint also alleges that Dr. Saldana negligently proscribed and provided Demerol to Tationia and instructed her on how to inject herself.

Defendant Saldana has filed preliminary objections to the plaintiffs' complaint. Defendant Saldana's first preliminary objection is a motion to strike Count II of the complaint and the second preliminary objection is a demurrer or motion to strike Count VI of the complaint. We will address each preliminary objection separately.

## I. MOTION TO STRIKE COUNT II OF THE COMPLAINT

Count II of the plaintiff's complaint seeks to allege that Dr. Saldana failed to obtain Tationia's informed consent for the intravenous injections of Demerol. The

plaintiff has conceded that this count of the complaint should be stricken. The doctrine of informed consent applies only to surgical or operative procedures and not to the administration of therapeutic drugs. *Gray v. Grunnagle,* 423 Pa. 144, 233 A.2d 663 (1966); *Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985); *Malloy v. Shanahan,* 280 Pa. Super. 440, 421 A.2d 803 (1980). As such, since no surgical or operative procedure has been alleged to have occurred, the motion to strike Count II of the complaint is granted.

## II. DEMURRER OR MOTION TO STRIKE COUNT VI OF THE COMPLAINT

Count VI of the plaintiffs' complaint attempts to set forth a claim for negligent infliction of emotional distress. The plaintiffs seeking to recover under this claim are the four children of Tationia Friend. The plaintiff-children are making this claim based on two separate alleged incidents that are pled in Count VI of the complaint.[1]

---

1. Count VI of the plaintiffs' complaint states in relevant part:

"(90) In or about the fall of 1990, on one occasion, defendant doctor administered a dose of Demoral intravenously to Tationia Friend ... while she was in his home. On that occasion Tationia Friend lost consciousness.

"(91) On the aforementioned occasion, Tationia Friend's daughters Tennelle, Tonya, Letrisha and Leshawna were present in the home of defendant doctor and witnessed their mother in an unconscious condition.

"(92) Tationia Friend's unconscious condition ... was the direct and proximate result of defendant doctor's negligence and carelessness.

"(93) As a direct and proximate result of the negligence of the defendant doctor ... together with personal and contemporaneous observation of the incident, Tennelle, Tonya, Letrisha and Leshawna

At the forefront, we must first outline the appropriate standard when ruling on a preliminary objection in the nature of a demurrer. In ruling upon a demurrer "the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained." *Sinn v. Burd,* 486 Pa. 146, 150, 404 A.2d 672, 674 (1979). In examining the complaint to determine if it sets forth a cause of action, we "admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom." (citations omitted) *Sinn,* 486 Pa. at 149, 404 A.2d at 674. Further, "conclusions of law and unjustified inferences are not admitted by the pleading." (citation omitted) *Id.*

Based on this standard of review, the facts pertinent to the question currently before the court are that the first alleged incident occurred in the fall of 1990, when

suffered immediate, severe, and substantial emotional distress and substantial mental pain and suffering.

"(94) Tonya has suffered repeated physical illness as a result.
...

"(95) On July 13, 1991 Tationia Friend was found by her daughters Letrisha and Leshawna in her bedroom in an unconscious condition after she injected a dose of Demoral given to her by defendant doctor.

"(96) One of plaintiff's daughters summoned an ambulance ...

"(97) Tationia Friend's unconscious condition ... was the direct and proximate result of defendant doctor's negligence and carelessness.

"(98) As a direct and proximate result of the negligence ... together with personal and contemporaneous observation of the incident, Letrisha and Leshawna suffered immediate, severe, and substantial emotional distress and substantial mental pain and suffering."

Dr. Saldana allegedly injected Tationia with Demerol while at his home, and Tationia's four children were in the doctor's home and witnessed Tationia in an unconscious condition. The second alleged incident occurred on July 13, 1991 when two of Tationia's children, Letrisha and Leshawna, found her unconscious after she had injected herself with Demerol supplied by Dr. Saldana, and one of the children summoned an ambulance by calling 911. The four children are alleged to have suffered immediate, severe, and substantial emotional distress and substantial mental pain and suffering, although Tonya is the only one alleged to have suffered any physical illness, as a result of finding their mother in the unconscious states. Defendant Saldana seeks a demurrer to this count of the complaint. With these facts in mind, we will now review the law concerning negligent infliction of emotional distress and determine if the plaintiff-children have set forth a cause of action.

The cause of action for negligent infliction of emotional distress has undergone much development in Pennsylvania. Prior to 1970 Pennsylvania courts rigidly employed the "impact rule" to determine if a person was entitled to recover for emotional distress. The "impact rule" was explained in *Knaub v. Gotwalt*, 422 Pa. 267, 270, 220 A.2d 646, 647 (1966) as follows: "The rule is long and well established in Pennsylvania that there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress, unless they are accompanied by physical injury or physical impact." (citations omitted) Applying this rule, the Pennsylvania Supreme Court denied recovery in *Knaub* to the mother, father and sister of a young man all of whom witnessed the young man killed when he was struck by an automobile because none of them were impacted by the

car. The parents were 25 feet away and the sister only three feet away when the man was struck and killed.

The courts of this Commonwealth continued to employ the "impact rule" until early 1970 when the Pennsylvania Supreme Court decided the case of *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970). In *Niederman,* a father was standing next to his son when his son was struck by a car and the father suffered emotional and physical harm because he witnessed the incident. In overruling the trial courts dismissal of the plaintiffs' complaint for failure to state a cause of action under the "impact rule," the Pennsylvania Supreme Court in *Niederman* abandoned the "impact rule" and adopted the "zone of danger theory" by holding,

"We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." *Niederman,* 436 Pa. at 413, 261 A.2d at 90.

Thus, under the "zone of danger theory" a person could recover for emotional distress only if they were in a position such that they could be impacted by the defendant's conduct and they feared the apparent pending impact, although an actual impact need not occur.

The "zone of danger theory" enunciated in *Niederman* was followed by the Pennsylvania courts until 1979 when the Pennsylvania Supreme Court decided the seminal case of *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). In *Sinn,* a girl and her sister were standing outside of their home when the girl was struck and killed by a car while her sister was not hit. The girls' mother witnessed this tragic accident from the

front door of her home. *Sinn,* 486 Pa. at 150, 404 A.2d at 674. The trial court, based on the *Niederman* decision, granted a demurrer to the mother's claim for damages for physical and mental injuries incurred when she saw her daughter struck and killed because the mother was not in the "zone of danger." *Sinn,* 486 Pa. at 152, 404 A.2d at 675. This decision was affirmed by the Superior Court in *Sinn v. Burd,* 253 Pa. Super. 627, 384 A.2d 1003 (1979). On appeal, the Supreme Court of Pennsylvania overruled the demurrer. In doing so the court abandoned the "zone of danger test" and adopted a foreseeability test to determine if a bystander could recover for negligent infliction of emotional distress. *Sinn,* 486 Pa. at 173, 404 A.2d at 686. In adopting this foreseeability test and enunciating the factors to determine foreseeability, the court cited with approval the California case of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), in which the California Supreme Court set forth three factors determinative of whether the injury to the plaintiff was reasonably foreseeable, those being:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Sinn,* 486 Pa. at 170, 404 A.2d at 685, citing *Dillon,* 69 Cal. Rptr. at 80, 441 P.2d at 920.

It is these three factors the courts of Pennsylvania currently employ to determine if a bystander is entitled to recover for negligent infliction of emotional distress.

In the case sub judice, the defendant argues that a demurrer should be granted because it has not been alleged that the plaintiff-children witnessed the alleged negligent administration of Demerol, but rather the complaint alleges only that the children witnessed their mother in an unconscious condition. The defendant argues that a person must witness the negligent act in order to recover for mental or emotional distress. The plaintiffs argue that actual visual observation of the negligent act is not essential where the facts of the case establish that the totality of a plaintiff's sensory awareness combine to convey the nature and import of the events sufficiently to cause emotional injury. Thus, of the three determinative factors set forth in *Sinn, supra,* the one in dispute is number two which is whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident.

In deciding this issue, we first look to the Pennsylvania Supreme Court's subsequent interpretations of its decision in *Sinn.* The Supreme Court has had the opportunity to revisit their decision in *Sinn* on three occasions. The first opportunity was in *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981). In *Yandrich,* a father was informed that his son was severely injured when he was struck by a car. The father did not witness the accident nor was he near the scene. The father learned of the accident and hurried to the scene but was informed his son had been taken to the hospital. The father proceeded to the hospital and remained there until his son died five days later. The father became depressed and committed suicide three months later. *Yandrich,* 495 Pa. at 245, 433 A.2d at 460. The estate of a father was seeking damages for emotional trauma and the father's subsequent suicide. *Id.* The trial court

granted a demurrer to the claim for negligent infliction of emotional distress based on the *Niederman* decision, *supra,* and that decision was upheld by the Superior Court. On appeal, the Supreme Court of Pennsylvania upheld the Superior Court's decision based on the holding in *Sinn, supra.* In so holding, the court found that "Since the first and second factors of the three pronged foreseeability test set forth in Sinn are totally lacking here ... relief cannot be granted." *Yandrich,* 495 Pa. at 247, 433 A.2d at 461.

The court's second opportunity came in the case of *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986). In *Mazzagatti,* a young girl was struck and fatally injured by a car. Her mother was at work a mile away at the time of the accident and was informed of the accident immediately after it occurred. The mother arrived at the scene just a few minutes after the accident and saw her daughter. *Mazzagatti,* 512 Pa. at 269, 516 A.2d at 673-74. The trial court granted the defendant's motion for summary judgement in the nature of a demurrer because the mother was not an eyewitness and did not have contemporaneous perception of the accident. This decision was affirmed by the Superior Court. *Id.* at 271, 516 A.2d at 675. On appeal, the Supreme Court affirmed the Superior Court's decision holding that the mother did not have a contemporaneous observation of the injury to her daughter. *Id.* at 280, 516 A.2d at 678.

The Pennsylvania Supreme Court's third opportunity to revisit the *Sinn* decision came a short time after the *Mazzagatti* decision, in the case of *Brooks v. Decker,* 512 Pa. 365, 516 A.2d 1380 (1986). In *Brooks,* the plaintiff-father was driving home when an ambulance passed him and the father followed it as it turned onto

the street on which he lived. As the father exited the vehicle he saw his son who had been hit by a car. The father then rode to the hospital in an ambulance with his son. *Brooks,* 512 Pa. at 367, 516 A.2d at 1381. The father brought an action claiming damages for emotional distress in Count III of his complaint. The defendants filed preliminary objections in the nature of a demurrer to Count III and the trial court sustained the demurrer; thereafter, the Superior Court affirmed that decision. *Id.,* 512 Pa. at 368, 516 A.2d at 1382. On appeal, the Supreme Court upheld the Superior Court's decision by holding, as in *Mazzagatti,* that there was no contemporaneous observation. *Brooks,* 512 Pa. at 370, 516 A.2d at 1382.

Thus, on the three occasions the Supreme Court of Pennsylvania has had the opportunity to revisit the *Sinn* decision, they have consistently denied recovery when the plaintiff has not witnessed the actual accident in which the close relative was involved. Likewise, the lower courts of Pennsylvania have denied recovery in such instances. In *Bloom v. DuBois Regional Medical Center,* 409 Pa. Super. 83, 597 A.2d 671 (1991), the Superior Court upheld the trial court's dismissal of a husband's claim for damages based on emotional distress he suffered as a result of finding his wife hanging by her shoelaces in the hospital after an attempted suicide. *Bloom,* 409 Pa. Super. at 105, 597 A.2d at 682. The court held that under the *Sinn/Mazzagatti* standard the husband failed to state a claim because "Mr. Bloom observed his wife in the aftermath of her own suicide attempt. He did not, however, observe any traumatic infliction of injury on his wife. ..." *Bloom,* 409 Pa. Super. at 105, 597 A.2d at 683. The court reasoned that:

"The gravamen of the observance requirement is clearly that the plaintiff in a negligent infliction case

must have observed the traumatic infliction of injury on his or her close relative at the hands of the defendant. The Supreme Court has drawn a line between cases involving observation of a traumatic event which has an immediate impact on the plaintiff and those not involving the observation of a traumatic event and where there is some separateness between the negligence of the defendant and its ultimate impact on the plaintiff. ... To recover the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiff's relative, with no buffer of time or space to soften the blow." *Id.,* 409 Pa. Super. at 104-105, 597 A.2d at 682. See also, *Halliday v. Beltz,* 356 Pa. Super. 375, 514 A.2d 906 (1986) (demurrer upheld on claim for emotional distress suffered by husband and daughter when mother died of complications after surgery); *Burkit v. Schubert,* 35 D.&C.3d 277 (1984) (demurrer to father's claim for emotional distress granted since father did not witness the dog attack on his daughter although he observed her immediately after). The Commonwealth Court reached a similar result in *Hoffner v. Hodge,* 47 Pa. Commw. 277, 407 A.2d 940 (1979). In *Hoffner,* the plaintiffs brought a medical malpractice action arising from a surgical procedure on a girl. The girl's twin sister and mother sought damages for mental pain and anguish as a result of witnessing the results of the negligent surgery. The Commonwealth Court affirmed the dismissal of these claims based on the *Sinn* decision, *supra,* stating "the law of Pennsylvania requires the personal observation of the event" and in this case only the results were witnessed. *Hoffner,* 47 Pa. Commw. at 281, 407 A.2d at 942; see also, *Vattimo v. Lower Bucks Hospital Inc.,* 59 Pa. Commw. 1, 428 A.2d 765 (1981) (mother and father were denied recovery for emotional distress stemming from the failure of a hos-

pital to supervise their son who started a fire in his room, the court reasoning that the *Sinn* standard was not met since the parents were not at the scene nor did they witness it), *modified,* 502 Pa. 241, 465 A.2d 1231 (1983). Thus, it is apparent that time and again the Pennsylvania courts have denied recovery, under the *Sinn* requirement of contemporaneous observation, to plaintiffs who did not witness the actual negligent impact on their close relative.

The plaintiffs in the case sub judice point the court to two cases in support of the proposition that an actual visual observation of the negligent act is not essential where the facts of the case establish that the totality of the plaintiff's sensory awareness combine to convey the nature and import of the events sufficiently to cause emotional injury. The first case is *Neff v. Lasso,* 382 Pa. Super. 487, 555 A.2d 1304 (1989), *alloc. denied,* 523 Pa. 636, 565 A.2d 445 (1989). In *Neff,* the plaintiff-wife was looking out her kitchen window. She observed her husband coming down the road in his truck. She also observed a vehicle approaching her husband from behind at a high rate of speed. The wife then heard an impact and ran out to see her husband lying unconscious. *Id.* 382 Pa. Super. at 491, 555 A.2d at 1306. For some reason, possibly an obstruction in her line of sight or her turning her head away, the wife did not see the actual collision. *Id.* 382 Pa. Super. at 491 n.3, 555 A.2d at 1306 n.3. The plaintiff-wife filed a suit in which she sought to recover damages for emotional distress arising from the accident. The Superior Court reversed the trial court's grant of a demurrer to the wife's claim. The court reasoned that:

"It may be true that unlike visual observation, aural awareness may rarely, standing alone, give rise to a sufficient awareness of the nature and import of the

event to cause severe emotional injury. However, aural perception (hearing the impact) when considered together with prior and subsequent visual observance ... may produce a full, direct, and immediate awareness of the nature and import of the negligent conduct. ..." *Id.* 382 Pa. Super. at 506, 555 A.2d at 1314.

Thus, it is apparent that the holding in *Neff* only refines the factor of "contemporaneous observance" to include those situations where a person sees the activity leading to an accident, hears the accident occur and then immediately witnesses the result of that accident. This interpretation of the *Neff* decision is in accord with the later Superior Court case of *Bloom v. DuBois Regional Medical Center, supra,* where the court stated that:

"In the thorough opinion authored by Judge Kelly in *Neff* ... a similar attempt at refining the observation requirement was made. There, a panel of this court concluded that in a motor vehicle accident case *Sinn* did not require actual visual observation of the impact, but rather included cases where the relative visually observed events leading to the injury and then heard the actual impact causing the injury." *Bloom,* 409 Pa. Super. at 103 n.10, 597 A.2d at 681 n.10.

The second case the plaintiffs point to in support of their argument is *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa. Super. 121, 622 A.2d 298 (1993). In *Krysmalski,* three children were in front of a grocery store while their mother was inside at the check-out line. The defendant then crashed through a concrete barrier and struck the kids causing severe injuries. *Id.* 424 Pa. Super. at 126, 622 A.2d at 301. After a jury trial, the jury awarded compensatory damages to the children and damages to the mother's estate (mother

died before trial) for emotional distress she suffered as a result of the accident. *Id.* In his post-trial motions, the defendant asked for a new trial on several grounds. One of which was that there was insufficient evidence in support of the emotional distress claim based on several arguments, one argument being that the mother did not witness the collision. *Id.* 424 Pa. Super. at 127, 622 A.2d at 302. The trial court denied the post-trial motions, and the Superior Court, sitting en banc, affirmed that decision. In deciding on the argument raised by the defendant, that the mother did not witness the accident, the Superior Court found that the evidence produced at trial led the jury to reasonably find that the mother was on the scene and had witnessed the accident. *Id.* 424 Pa. Super. at 130, 622 A.2d at 303. This evidence included that the accident occurred at the entrance of the store; the children were waiting just outside of the store at the entrance; the mother was in the check-out line which faced the lot; the lot was visible from inside the store; and a security officer's testimony supported that the mother witnessed the accident. *Id.* 424 Pa. Super. at 129, 622 A.2d at 302. As such, the Superior Court's decision in *Krysmalski* was based on a situation where the plaintiff actually witnessed the accident. Although, the court went on in dicta to state that even if the mother was not on the scene at the moment of actual impact, she heard the crash and knew her children were at the scene of the crash and as such she had a contemporaneous sensory observation of the accident. In support of this proposition the court cited the decision in *Neff, supra.* We believe that the *Neff* decision, and to a lesser degree the dicta in the *Krysmalski* decision, serve only to refine the *Sinn* factor of contemporaneous sensory observation to include those situations where the plaintiff witnesses

the events immediately leading up to an accident, the plaintiff hears the accident occur, and the plaintiff witnesses the aftermath of the accident.

In the case sub judice, the facts as evidenced by the complaint indicate only that the plaintiff-children on two occasions witnessed their mother in an unconscious condition. Hence, they only witnessed the aftermath of the alleged negligent conduct of the defendant-doctor, that being the providing of and administration of Demerol to the mother. There are no facts pled or reasonable inferences that can be drawn that show the children were witnesses to the actual alleged negligent injection at the defendant-doctor's home, or to the alleged negligent providing of Demerol which the mother used later at her own home. The only facts before this court are that the plaintiff-children found their mother in an unconscious condition on two occasions. Thus, there has been no contemporaneous observation by the plaintiff-children. Further, the facts of this case do not lend themselves to the refinement of the contemporaneous observation requirement established in *Neff,* as that decision only refined the contemporaneous observation requirement to include limited situations where a plaintiff views the events leading to the accident, hears the accident, and immediately sees the result of the accident.

Thus, in light of the Pennsylvania Supreme Court's decision in *Sinn* and its progeny, we are not in a position to expand the meaning of contemporaneous observation requirement; and as such, we are constrained to find that the plaintiff-children have not stated a cause of action for negligent infliction of emotional distress because of failing to meet the contemporaneous observation require-

ment enunciated in *Sinn.*[2] As such, a demurrer to Count VI is proper.

Also, the defendant has argued that a demurrer to the claims brought by three of the plaintiff-children should be granted since it has been pled that only one of the four plaintiff-children has suffered a physical illness as a result of the emotional distress. The defendant-doctor contends a manifestation of a physical illness is required to recover for a claim of emotional distress. Because of our decision today, we need not pass judgement on this issue, although we note there is ample case law to support the defendant's contention. See *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 633 A.2d 605 (1993); *Wall v. Fisher,* 388 Pa. Super. 305, 565 A.2d 498 (1989); *Banyas v. Lower Bucks Hospital,* 293 Pa. Super. 122, 437 A.2d 1236 (1981).

For the foregoing reasons, we would grant the motion to strike Count II of the complaint and also grant a demurrer to Count VI of the plaintiff's complaint.

### ORDER

And now, February 13, 1995, upon consideration of defendant Saldana's preliminary objections, and after hearing arguments and having briefs submitted, it is hereby ordered that:

(I) The motion to strike Count II of the plaintiffs' complaint is granted,

(II) The demurrer to Count VI of the plaintiffs' complaint is granted.

---

2. Although the plaintiffs have alleged in paragraphs 93 and 98 of their complaint that they had "personal and contemporaneous observation of the incident," this is a legal conclusion that is not admitted by the pleading.