633 A.2d 605

Dawn ARMSTRONG and Thomas J. Armstrong, h/w

v.

PAOLI MEMORIAL HOSPITAL, Appellant.

Superior Court of Pennsylvania.

Argued May 19, 1993.

Filed Sept. 20, 1993.

Reargument Denied Dec. 22, 1993.

38

R. Bruce Morrison, Philadelphia, for appellant.

Eric Zajak, Philadelphia, for appellees.

Before WIEAND, CIRILLO and CERCONE, JJ.

CIRILLO, Judge.

In this appeal we are asked to consider whether the trial court erred when it ruled that a jury award of $1,000 on a claim of negligent infliction of emotional distress warranted a new trial on the damages question alone and whether the trial court erred when it refused to enter a judgment *non obstante veredicto* (j.n.o.v.). On both questions, we reverse.

As she was dressing her young son for a birthday party one morning, Dawn Armstrong received a telephone call from Paoli Memorial Hospital, Paoli, informing her that her husband had been in an accident and asking her to come to the hospital.

The hospital had summoned Mrs. Armstrong because a critically injured accident victim named Thomas Armstrong had been brought in unconscious by ambulance. Following a hospital policy to notify the next-of-kin as quickly as possible, an emergency room employee asked information for a tele-

phone number of Thomas Armstrong in Chester. Based on that information, she called Dawn Armstrong.

Once at the hospital, Dawn Armstrong met with a neurosurgeon and examined X-rays of a man with a crushed cranium. She was not allowed to see the patient. Only after she had been at the hospital for more than an hour did her sister see the accident victim's driver's license. Then, it was clear the accident victim was not Dawn Armstrong's husband, Thomas *J.* Armstrong, but Thomas *H.* Armstrong, also of Chester. Dawn Armstrong testified that when she heard the injured man was not her husband, "I just lost it. I urinated, defecated, and I just lost it completely."

As a result of the misidentification, Dawn Armstrong testified she suffers from depression, nightmares, insomnia and unreasonable fears about the safety and whereabouts of her husband and son for which she has undergone psychological counseling.

The Armstrongs filed suit against Paoli Memorial Hospital, alleging negligent infliction of emotional distress, intentional infliction of emotional distress and asking for compensatory and punitive damages. The count of intentional infliction of emotional distress and the request for punitive damages were dismissed by the trial judge at the close of testimony. Only the question of negligent infliction of emotional distress went to the jury. The claims for intentional infliction of emotional distress and punitive damages were not revived in post-trial motions. In response to post-trial motions the trial court entered a single order granting a new trial as to damages, calling a verdict of $1,000 "inadequate, indeed supremely embarrassing," and denying the hospital a j.n.o.v.

In this appeal, Paoli Memorial Hospital asks us to consider whether:

1) The trial court erred when it denied the hospital's motion for judgment n.o.v.;

2) The trial court erred when it admitted evidence of subsequent remedial measures;

3) The trial court abused its discretion when it ordered a new trial on damages only.

Because of our disposition of the first issue, we need not reach the second or third question and so shall not, except to note that Pennsylvania has recognized a rule against the admission of evidence of subsequent repairs since 1902 because admitting such evidence "punishes a prudent and well-meaning defendant who guards against the recurrence of an accident he had no reason to anticipate . . ." *Baron v. Reading Iron Co.*, 202 Pa. 274, 284, 51 A. 979, 980 (1902). However, two Pennsylvania cases have admitted evidence of subsequent repairs in cases in which the feasibility of avoiding an inherent danger was not in issue. *See Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971) (warning label with antibiotic strengthened after child's death); *Hyndman v. Pennsylvania R.R. Co.*, 396 Pa. 190, 152 A.2d 251 (1959) (warning sign erected after child died of burns after touching transformer).

In this case, the trial court admitted evidence of the hospital's policy for notifying next-of-kin, a policy which was adopted *after* Dawn Armstrong was mistakenly summoned to the hospital. The trial judge permitted questioning of a defense witness regarding deviation from the conduct outlined in the hospital's subsequent policy. Thus, the record reveals that the policy was used not to demonstrate the feasibility of avoiding error, but to define a standard of care from which the jury might infer negligence. When a trial court allows evidence of subsequent remedial measures to be introduced to demonstrate prior negligence, as it did here, it abuses its discretion. *Baron, supra.*

Our standard of review of an order denying j.n.o.v. is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemanne–Siemag Aktiengesellschaft, et al.*, 523 Pa. 1, 4, 564 A.2d 1244, 124689149752 (1989). The standard of review for an appellate court is the same as that for a trial court: j.n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v.*

*Penske–Olds–Cadillac–GMC,* 413 Pa.Super. 308, 312, 605 A.2d 373, *appeal denied,* 532 Pa. 665, 616 A.2d 985 (1992). An appellate court will reverse a trial court ruling only if it finds there was not sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every favorable inference reasonably drawn from the evidence. *McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982).

When we review an order granting a new trial, we must consider whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 425, 521 A.2d 413, 420–21 (1987). We presume the trial court was justified in granting a new trial even if the stated reason is insufficient. *Commonwealth ex rel. Meyers v. Stern,* 509 Pa. 260, 264, 501 A.2d 1380, 1382 (1985). When the trial court, as here, enumerates reasons for its decision to grant a new trial, appellate review is focused upon the legal adequacy of the reasons given for the new trial. *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 445, 625 A.2d 1181, 1187 (1993); *see also, Westinghouse Elevator Co. v. Herron,* 514 Pa. 252, 255, 523 A.2d 723, 725 (1987).

Not every wrong constitutes a legally cognizable cause of action. *Lubowitz v. Albert Einstein Med. Center,* 424 Pa.Super. 468, 472, 623 A.2d 3, 5, (1993) (false report of exposure to AIDS is not a legally cognizable injury). The law cannot be expected to compensate for every minor psychic shock incurred in the course of everyday living. *D'Ambra v. United States,* 114 R.I. 643, 653, 338 A.2d 524, 529 (1976), cited with approval in *Sinn v. Burd,* 486 Pa. 146, 168, 404 A.2d 672, 683 (1979). Not every loss constitutes a legal injury for which compensation is available. Prosser on Torts, 4th ed. § 1 (1971).

The fundamental question underlying this appeal is whether Pennsylvania recognizes an independent tort of negligent infliction of emotional distress.

██ When we consider the alleged cause of action in this case we must first consider what it is not. This is not a case of intentional infliction of emotional distress, the tort of outrage, in which the test for recovery is the outrageousness of the conduct and the degree to which the emotional distress has created medically-documented physical symptoms. That count was properly dismissed at the close of testimony when the trial judge found that there was no evidence to support the level of outrage and intent or recklessness required to support a cause of action for intentional infliction of emotional distress. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987).[1]

This case is, however, one of negligence, negligently inflicted emotional distress for which the test as outlined in the Restatement (Second) of Torts § 313 is one of reasonable foreseeability.[2] Is the injury a reasonably foreseeable result of the defendant's negligence? [3]

1. The tort of outrage, intentional infliction of emotional distress, based on Section 46 of the Restatement (Second) of Torts has not been adopted nor made part of the law of Pennsylvania. *Kazatsky, supra. See also Johnson v. Caparelli*, 425 Pa.Super. 404, 625 A.2d 668 (1993); *Kelly v. Resource Housing of America*, 419 Pa.Super. 393, 399, 615 A.2d 423, 426 (1992).

2. **Section 313 Emotional Distress Unintended**
 (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
 (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
 (b) from facts known to him should have realized the distress, if it were caused, might result in illness or bodily harm.
 (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.
 Restatement (Second) of Torts, § 313.

3. Whether the act is negligent or not is judged by section 313; the injury is measured by the standards set forth in section 436A:
 **§ 436A. Negligence resulting in Emotional Disturbance Alone**
 If the actor's conduct is negligent as creating an unreasonable risk of causing ·either bodily harm or emotional disturbance to another, and

 The tort of negligent infliction of emotional distress has evolved almost exclusively in the context of those who observe injury to close family members and are as a consequence of the shock emotionally distressed. To state a cause of action for negligent infliction of emotional distress the plaintiff must demonstrate that she is a foreseeable plaintiff and that she suffered a physical injury as a result of the defendant's negligence. Restatement (Second) of Torts, §§ 313, 436A, *supra.*

 Physical injury must be averred to sustain a cause of action for negligent infliction of emotional distress. *See Covello v. Weis Markets, Inc.,* 415 Pa.Super. 610, 610 A.2d 50 (1992), *appeal denied,* 533 Pa. 644, 622 A.2d 1376 (1993), (policeman who was unable to extricate a child from a trash compactor failed to allege physical harm to himself); *Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. 8, 589 A.2d 1143 (1991) (demurrer sustained for failure to state a cause of action when plaintiff failed to allege physical harm from a raucous hospital staff birthday celebration while she was being treated); *Wall by Lalli v. Fisher,* 388 Pa.Super. 305, 565 A.2d 498, *allocatur denied,* 526 Pa. 636, 584 A.2d 319 (1989) (mother who witnessed a dog bite her child failed to aver physical injury to herself); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981) (plaintiff who was charged with murder after hospital records were altered to blame him for a death and to conceal malpractice failed to aver physical harm and, thus, stated no cause of action for negligent infliction of emotional distress).

 The requirement that physical harm must accompany emotional distress to state a cause of action is based on the Restatement (Second) of Torts § 436A, *supra.* Temporary fright, nervous shock, nausea, grief, rage, and humiliation if transitory are not compensable harm; but, long continued nausea or headaches, repeated hysterical attacks or mental

it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.
Restatement (Second) of Torts § 436A.

aberration are compensable injuries. This court applied the Restatement standards to a case in which the plaintiff averred "headaches, shaking, hyperventilation, nightmares, shortness of breath, lack of control over the bowels, and tightening of the muscles in the neck, back and chest" and found that she had stated a cause of action for negligent infliction for emotional distress when her employer wrongfully coerced her to enter an abusive substance abuse program. *Crivellaro v. Pennsylvania Power and Light,* 341 Pa.Super. 173, 491 A.2d 207 (1985). Relying on Comment *c* to § 436A, a panel of this court held that "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ... ongoing mental, physical and emotional harm" sufficiently stated physical manifestations of emotional suffering to sustain a cause of action. *Love v. Cramer,* 414 Pa.Super. 231, 606 A.2d 1175 (1992). Cases which the *Crivellaro* court collected from other jurisdictions cite depression, nightmares, nervousness, insomnia and hysteria as physical symptoms warranting recovery. *Crivellaro,* 341 Pa.Super. at 180, 491 A.2d at 210.

In this case, Armstrong's allegation of loss of continence when she learned the accident victim coupled with her claim of depression, nightmares and insomnia meet the requirement of allegation of physical injury.

While physical injury is necessary to recovery, it is not sufficient. Armstrong must still demonstrate that she was a foreseeable plaintiff towards whom the hospital acted negligently.

The requirement that a plaintiff allege physical injury is intrinsic to the question of who is a foreseeable plaintiff. The original test for whether a tortfeasor was liable for the emotional distress of another was the "impact rule." There was no recovery for emotional disturbance unless it was accompanied by physical injury or physical impact. *Knaub v. Gotwalt,* 422 Pa. 267, 270, 220 A.2d 646, 647 (1966). The impact rule yielded to a zone of danger test in *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970). When *Niederman's* "zone of danger" rule became unworkable, Pennsylvania adopted the

foreseeability test of *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

The test adopted in *Sinn v. Burd* is that the infliction of emotional distress is reasonably foreseeable when the plaintiff was located near the scene of the accident; when the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident; and when the plaintiff and victim were closely related. *Id.; Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 276, 516 A.2d 672, 677 (1986).

In *Sinn v. Burd* the mother who watched from the front porch of her home as a car struck and killed her child was found to be a foreseeable plaintiff and to have a cause of action for mental distress and its effects. Since *Sinn v. Burd,* the debate has centered on the meaning of "sensory and contemporaneous observance." *Sinn v. Burd,* 486 Pa. at 171, 404 A.2d at 685. In *Yandric v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981), the state supreme court held that a father who arrived on the accident scene after his son had been taken to the hospital had not stated a cause of action. Five years later the court reached the same conclusion in *Mazzagatti,* regarding a mother who arrived on the scene minutes after the accident and saw her child's body in the street. *Mazzagatti,* 512 Pa. at 280, 516 A.2d at 679. The court reasoned that where the close relative is not present at the scene of the accident, but instead learns of the accident from a third party, the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene. By contrast the relative who contemporaneously observes the tortious conduct has no time in which to brace his or her emotional system. The negligent tortfeasor inflicts upon this bystander an injury separate and apart from the injury to the victim. *Id.* at 279–80, 516 A.2d at 679.

In *Brooks v. Decker,* 512 Pa. 365, 516 A.2d 1380 (1986), our Supreme Court held that a father who followed an ambulance to the scene of an accident and saw his injured son in the street failed to state a cause of action. And, in *Bloom v.*

*Dubois Regional Medical Center*, 409 Pa.Super. 83, 597 A.2d 671 (1991), this court denied recovery to a husband who found his wife hanging by her neck in a hospital room, allegedly due to the failure of the hospital and her doctor to treat her suicidal tendencies. The panel held that the husband had not witnessed the tortious conduct, only its aftermath.

The next year, a panel of this court allowed recovery by a woman whose mother died in her arms after a doctor failed to diagnose or treat a serious heart ailment. The daughter had taken her mother for treatment and was present when the doctor was dismissive of the woman's symptoms. *Love v. Cramer, supra* (Cirillo, J., dissenting). This court has also allowed a wife to recover when she saw a speeding vehicle heading for her husband's car, heard the collision, and immediately realized her husband had been struck. *Neff v. Lasso,* 382 Pa.Super. 487, 555 A.2d 1304, *allocatur denied,* 523 Pa. 636, 565 A.2d 445 (1989). Most recently, this court *en banc* allowed recovery for negligently inflicted emotional distress to a mother who was standing at the head of a supermarket checkout line near a plate glass window when her children were terribly injured by a drunken driver just outside the window. *Krysmalski v. Tarasovich,* 424 Pa.Super. 121, 622 A.2d 298 (1993) (Cirillo, J., dissenting).

Thus, the impact rule, *Knaub, supra,* became the zone of danger test, *Niederman, supra,* and finally the three-part test of *Sinn v. Burd, supra.* In the evolution, the change was not in the need to allege physical harm but in the expansion of the proximate cause of the harm. Originally the law required that the harm be caused by the impact; today we recognize that the shock of apprehending an injury to a loved one can cause physical manifestation of emotional disturbance.

In the case at hand, Dawn Armstrong fails to meet the bystander test of *Sinn v. Burd* because she was not related to the accident victim and she did not have a contemporaneous perception of the accident. She posits her theory of recovery on a separate and independent tort, that which

48

was allegedly committed when she was mistakenly summoned to the hospital.

Only two appellate cases in Pennsylvania have held that the question of negligent infliction of emotional distress in a context other than bystander recovery should go to the jury. In *Stoddard v. Davidson*, 355 Pa.Super. 262, 513 A.2d 419 (1986), the question was whether there was sufficient "impact" to allow recovery when the plaintiff was emotionally distressed after he ran over the body of a woman whom the defendant killed and left lying in the road. The plaintiff alleged that his distress arose when he had to hold a cover over the corpse for three hours during the police investigation of the victim's death. The panel, with one concurrence and one dissent, found sufficient impact alleged to allow a jury to decide if there was negligent infliction of emotional distress. *Id.* at 267, 513 A.2d at 422.

In the second case, *Crivellaro, supra,* the question was whether an employee who was coerced by her employer into entering an controversial drug and alcohol rehabilitation program has alleged sufficient physical manifestation of her injury to recover. A panel of this court found that she had.

This case asks us to expand the tort of negligent infliction of emotional distress beyond the fact situations of liability to close family members who actually witness an accident, something which, with the exception of *Stoddard, supra,* and *Crivellaro, supra,* Pennsylvania has consistently refused to do.

Among the cases in which this court has refused to recognize an independent tort of negligent infliction of emotional distress is *Lubowitz, supra,* in which a false report of exposure to AIDS was insufficient to support a cause of action for negligent infliction of emotional distress. *Lubowitz* followed the reasoning of the asbestos cases in Pennsylvania in which this court has found that fear of disease is not a compensable wrong. *See Ottavio v. Fibreboard Corp.,* 421 Pa.Super. 284, 617 A.2d 1296 (1992) (*en banc*); *see also Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984). In *Salerno v. Philadelphia Newspapers Inc.,* 377 Pa.Super. 83,

546 A.2d 1168 (1988) this court found that in an action for defamation and libel that there was no independent cause of action for negligent infliction of emotional distress when the newspaper article was not defamatory. This court again declined to find a cause of action for negligent infliction of emotional distress when the mishandling of a body was merely negligent and not intentional. *Hackett v. United Airlines*, 364 Pa.Super. 612, 528 A.2d 971 (1987), *appeal denied*, 518 Pa. 649, 544 A.2d 961 (1988). This court twice declined to extend Section 46 of the Restatement (Second) of Torts, the tort of outrage, intentional infliction of emotional distress, to cases in which the infliction of emotional distress was merely negligent. *See Jackson v. Sun Oil Co. of Pennsylvania*, 361 Pa.Super. 54, 521 A.2d 469 (1987) (supervisor neglected to tell burner service technician teenager had recanted her charge that he made unwelcome sexual advances); *Pierce v. Penman*, 357 Pa.Super. 225, 515 A.2d 948 (1986) (refusal to turn over copies of medical records; "[s]ection 46 does not recognize liability for mere negligent infliction of emotional distress. However, reckless conduct causing emotional distress renders an actor liable as if he had acted intentionally." (citation omitted)).[4] This court affirmed the dismissal of a cause of action for negligent infliction of emotional distress on the grounds that the defendant owed the plaintiff no duty to talk to her in timely fashion in *Reimer v. Tien*, 356 Pa.Super. 192, 514 A.2d 566 (1986). When a plaintiff was reprimanded by a club secretary for failing to conform to club rules, this court found no cause of action for negligent infliction of emotional distress. *Lazor v. Milne*, 346 Pa.Super. 177, 499 A.2d 369 (1985). When Bell Telephone Company disclosed to an abusive husband from whom his wife was hiding the place of origin of telephone

**4.** Pierce collected $2,500 in compensatory damages and $10,000 in punitive damages on a suit originally brought in equity to gain a copy of her medical records. *Pierce v. Penman*, 357 Pa.Super. 225, 515 A.2d 948 (1986). The panel found that the doctor's conduct in first withholding and then claiming that the records were stolen in a burglary was sufficiently outrageous to warrant recovery under the tort of intentional infliction of emotional distress. That decision was rendered a year before the state supreme court in *Kazatsky, supra,* opined in 1987 that the tort of outrage had not been incorporated into the law of Pennsylvania.

calls made by the wife, this court found no cause of action for negligent infliction of emotional distress because "liability therefor must be founded upon one's personal observation of physical injury negligently inflicted by another on a third person." *Nagy v. Bell Telephone Co. of Pennsylvania*, 292 Pa.Super. 24, 27, 436 A.2d 701, 703 (1981).

In the line of cases in which this court found that the plaintiff had failed to state a cause of action for negligent infliction of emotional distress because he or she had failed to allege physical harm, the court declined to reach the question of whether the underlying wrong would have sustained a cause of action for negligent infliction of emotional distress had physical harm been alleged. *See Banyas, supra* (murder charge against plaintiff allowed to stand to conceal medical malpractice); *Abadie, supra* (hospital staff held a party while patient waited in pain).

When we summarize the Pennsylvania cases, we find only two anomalous cases which were not brought by bystanders meeting the test of *Sinn v. Burd* in which an independent cause of action for negligent infliction of emotional distress has been sustained. Those two cases are *Crivellaro, supra*, and *Stoddard, supra*.

To understand why *Armstrong v. Paoli Memorial Hospital* will not be a third anomalous case in Pennsylvania, and indeed why at least one of the two apparent anomalies is actually not, we must look to the development of the tort of negligent infliction of emotional distress in other jurisdictions.

Few if any jurisdictions recognize an independent cause of action for negligent infliction of emotional distress. D. Crump, *Evaluating Independent Torts Based Upon "Intentional" or "Negligent" Infliction of Emotional Distress: How Can We Keep the Baby from Dissolving in the Bath Water,* 34 Ariz.L.Rev. 439 (Fall, 1992). More often the tort of negligent infliction of emotional distress is premised on the violation of a pre-existent duty based on a contractual or implied contractual relationship. *Id.; cf. Crivellaro, supra*, (pre-existent employer-employee relationship).

California experimented with allowing recovery on an independent tort of negligent infliction of emotional distress. The Armstrongs argue that *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), is persuasive. In *Molien,* the California Supreme Court held that a general duty to refrain from inflicting serious mental distress was based on the foreseeability of the plaintiff. The *Molien* case allowed a husband to recover for his mental distress after his wife was wrongly diagnosed as having syphilis. Only a few years later, the same court expressed reservations about the "limitless exposure to liability." *Thing v. LaChusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 821 (Cal.1989). A second California appellate court decision found that *Molien* created a "quagmire of novel claims." *Andalon v. Superior Court,* 162 Cal.App.3d 600, 208 Cal.Rptr. 899, 903 (1984). By 1992, California had abolished negligent infliction of emotional distress as an independent tort and had narrowed its scope to include only those cases in which a contractual relationship existed, *Burgess v. Superior Court,* 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992), or those in which a bystander witnessed an injury to a loved one. *Andalon, supra.*

Several other states have also abolished an independent tort of negligent infliction of emotional distress, in some cases to avoid limitless recoveries under the "pay any sums" clauses of homeowner's insurance policies. *See, e.g., Harpy v. Nationwide Mut. Fire Ins. Co.,* 76 Md.App. 474, 545 A.2d 718, 724 (1988) (no independent tort of negligent infliction of emotional distress to allow a sexually abused daughter to collect from her father on his homeowner's insurance policy); *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581, 587 (W.Va.1988) (homeowner's insurance policy not required to pay for teacher-insured's abuse of a male student).

Other states have declined to find an independent cause of action for negligent infliction of emotional distress to avoid a tidal wave of litigation. Connecticut, for instance, declined "to open up a wide vista of litigation in the field of bad manners." *Maloney v. Conroy,* 208 Conn. 392, 545 A.2d 1059 (1988),

*quoting,* Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harvard Law Review 1033 (1936).

Missouri uses duty as the threshold inquiry before entertaining a cause of action for negligent infliction of emotional distress. *Asaro v. Cardinal Glennon Memorial Hospital,* 799 S.W.2d 595 (Mo.1990) (*en banc*) (no negligent infliction of emotional distress when medical malpractice forces a mother to watch her son suffer); *Turner v. General Motors Corp.,* 750 S.W.2d 76 (Mo.App.1988) (no negligent infliction of emotional distress after security guards filmed and then showed to co-workers an employee's son masturbating).

In 1976 Washington state allowed recovery for negligent infliction of emotional distress in *Hunsley v. Giard,* 87 Wash.2d 424, 553 P.2d 1096 (1976). There, the court allowed recovery when a car which crashed into a house putting a woman in fear for the life of the driver of the car and her husband who was in a nearby room. But, by 1990, the Washington court had limited recovery to bystander cases. *Gain v. Carroll Mill Co.,* 114 Wash.2d 254, 787 P.2d 553 (1990) (no recovery to the brother and father who saw a state trooper's death on television).

The few cases in which an independent cause of action for negligent infliction of emotional distress was found to lie include *Finn v. City of New York,* 76 Misc.2d 388, 350 N.Y.S.2d 552 (1973), in which a city hospital was found to have violated a statutory duty to notify the police of a death. The failure delayed notification to the next of kin for a week, a week during which the family had been searching for the victim. A finding of a breach of duty also determined the outcome of *Whalley v. Sakura,* 804 F.2d 580 (10th Cir.1986), in which lack of post-operative care was grounds for a cause of action for negligent infliction of emotional distress. An underlying duty also lead to the recovery by a California man for negligent infliction of emotional distress after his attorney's incompetence led to a conviction on murder charges. In a subsequent trial he was acquitted and then sued his attorney for malpractice, winning a verdict of $400,000 on grounds of negligent infliction of emotional distress. The California ap-

pellate court held that the plaintiff need not show physical injury to bring the action, that the invasion of his liberty interest sufficed. *Holliday v. Jones,* 215 Cal.App.3d 102, 264 Cal.Rptr. 448 (1989).

A quasi-contractual relationship giving rise to a duty also existed between a Maine man and the hospital and funeral home which delivered to him a severed human leg instead of the personal belongings of his deceased father. The appeals court said in this case that the plaintiff need not allege or prove physical injury to maintain a cause of action for negligent infliction of emotional distress. *Gammon v. Osteopathic Hospital of Maine, Inc.,* 534 A.2d 1282 (Maine 1987). In an Alaska case, however, when a claim for breach of contract was disallowed, the Alaska Supreme Court reversed damages for negligent infliction of emotional distress on the grounds that Alaska did not recognize an independent tort of negligent infliction of emotional distress. *Hancock v. Northcutt,* 808 P.2d 251 (Alaska 1991). The *Hancock* court found that failure to construct a house on time did not give rise to liability for negligent infliction of emotional distress.

Duty also informs the jurisprudence of negligent infliction of emotional distress developing under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. The Third Circuit Court of Appeals found that protracted exposure to stressfully injurious working conditions can lead to employer liability for negligent infliction of emotional distress under FELA. *Carlisle v. Consolidated Rail Corp.,* 990 F.2d 90 (3d Cir.1993). In *Gottshall v. Consolidated Rail Corp.,* 988 F.2d 355 (3d Cir. 1993), the Third Circuit for the first time upheld recovery under the FELA for negligent infliction of emotional distress without proof of any physical impact, under circumstances where the emotional distress was accompanied by physical manifestations.

The Third Circuit affirmed a finding by the jury that Conrail breached its well-established duty under FELA to provide a safe workplace, that such injuries were the foreseeable result of Conrail's negligence, and that Carlisle's demanding and dangerous workplace caused the plaintiff's his emo-

tional and physical injuries. *Carlisle, supra. Cf. Sano v. Pennsylvania R.R. Co.*, 282 F.2d 936, 937 (3d Cir.1960) (FELA imposes on railroads a clear duty to provide their employees with a safe workplace).

In *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), the Supreme Court declined to decide whether wholly emotional injuries arising from work conditions were compensable under FELA. The Seventh Circuit has reaffirmed its earlier holding that purely emotional injuries are not compensable under the FELA, while the Ninth Circuit continues to operate under a pre-*Buell* holding allowing full recovery under the FELA for emotional injuries. *See Ray v. Consolidated Rail Corp.*, 938 F.2d 704 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 813 (1992); *Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1313 (9th Cir.1986); *Pierce v. Southern Pac. Transp. Co.*, 823 F.2d 1366, 1372 n. 2 (9th Cir.1987). The First, Fourth, Fifth and Sixth circuits have declined to decide whether emotional injuries without injury or accident are compensable under the FELA, ruling in each case that the plaintiff failed to make a requisite threshold showing. *See Moody v. Maine Cent. R.R.*, 823 F.2d 693 (1st Cir.1987); *Elliott v. Norfolk & Western Ry.*, 910 F.2d 1224 (4th Cir.1990); *Plaisance v. Texaco*, 966 F.2d 166 (5th Cir.1992) (en banc); *Adams v. CSX Transp., Inc.*, 899 F.2d 536 (6th Cir.1990).

In one of the few cases nationwide in which negligent infliction of emotional distress was allowed as an independent cause of action without a prior duty either by contract or by statute, the South Dakota Supreme Court held that it was for a jury to decide if swallowing part of the slimy remains of a decomposed mouse in a soft drink was sufficiently injurious to warrant recovery. *Wright v. Coca Cola Bottling Co.*, 414 N.W.2d 608 (S.D.1987).

Cases in which the courts have not recognized independent claims for negligent infliction of emotional distress include distress caused by clumsy firing, *Havens v. Tomball Community Hospital*, 793 S.W.2d 690 (Tex.App.1990) (nurse who was fired for reporting an improper procedure by a doctor did not

state a cause of action); a frightening airplane emergency, *Eastern Airlines, Inc. v. King,* 557 So.2d 574 (Fla.1990) (no cause of action for passengers who saw airplane lose three of four engines, restarting one only at the last minute); fear of disease, *Burns v. Jaquays Mining Corp.,* 162 Ariz. 186, 781 P.2d 1373 (1986) (neighbors of asbestos mine have no cause of action without actual injury); *Cathcart, supra* (no cause of action for fear of contracting a disease).

In the employment context, for instance, employees who feel wrongfully discharged routinely bring suit for negligent infliction of emotional distress. In one of the most egregious examples a thief sued her victim for reporting the theft to the police. *Wal–Mart v. Medina,* 814 S.W.2d 71 (Tex.App.1991). Although the jury found Wal–Mart had not acted maliciously in reporting a suspected theft to the police, it found negligent infliction of emotional distress and the trial court awarded substantial damages. The appellate court reversed, finding that Wal–Mart had not breached a duty of care to Medina and had in fact fulfilled a public policy in favor of the prosecution of crime.

Parents who received mistaken notification that their daughter was dead were denied recovery for negligent infliction of emotional distress because the Supreme Court of Kansas said they had failed to prove their injuries stemmed from the mistaken notification and not from coping with her actual injuries. *Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 662 P.2d 1214 (1983).

When we look at Pennsylvania appellate cases against the backdrop of the development of the law of negligent infliction of emotional distress in other states, it becomes clear that Pennsylvania allows recovery for negligent infliction of emotional distress under two circumstances. First, and most commonly, in cases in which there is liability to a bystander, *Sinn v. Burd, supra,* and its progeny. Second, Pennsylvania also recognizes recovery in situations in which there is a contractual or fiduciary duty. *Crivellaro, supra; Hackett, supra.* A Pennsylvania plaintiff may be able to

recover when the infliction of emotional distress is intentional, *Kazatsky, supra,* or sufficiently reckless to amount to intent. *Pierce v. Penman, supra; Chuy v. Philadelphia Eagles Football Club, Inc.,* 595 F.2d 1265 (1979). Damage awards for emotional distress are also routinely included in damages awarded on other completed torts. *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992).

With the exception of the *Stoddard* case, Pennsylvania has never recognized an independent tort of negligent infliction of emotional distress. The *Stoddard* case is an anomaly. In the three-judge panel decision one judge concurred in the result and the third wrote a persuasive dissent. The dissenting judge argued that if the plaintiff were emotionally distressed, his distress was caused by the police officer who induced or coerced him into holding a cover over a corpse for three hours and was not caused by the defendant who left the corpse in the road. *Stoddard, supra* (Johnson, J., dissenting).

The law is not the guarantor of an emotionally peaceful life. Tort law cannot protect any of us from the emotional slings and arrows of daily living. Not every mistake that happens will be legally cognizable. Were we to allow Dawn Armstrong to collect, we would risk opening the floodgates of litigation in Pennsylvania, something we decline to do.

Factually, Dawn Armstrong is in a particularly perilous position. Had the telephone call from Paoli Memorial Hospital been accurate, she could not have stated a cause of action for any emotional distress she suffered learning of her husband's injuries. Consequently, Dawn Armstrong is forced to argue that she was injured when she learned it was not her husband who was injured, information which foreseeably would cause relief, not distress. Indeed, Armstrong testified that it was when she learned it was not her husband in the hospital that she "lost it."

Our review of the law of Pennsylvania and our sister states makes it clear that to state a cause of action for negligent infliction of emotional distress, Dawn Armstrong must demonstrate that she is a bystander who meets the criteria of *Sinn*

*v. Burd, supra,* or that the defendant, Paoli Memorial Hospital, owes her a pre-existing duty of care, either through contract or fiduciary duty. *Crivellaro, supra; Hackett, supra.* This she cannot do. Dawn Armstrong was not a bystander who witnessed an injury to a close family member, nor did Paoli Memorial Hospital owe her a pre-existing duty of care.

Since we find that the Armstrongs have not stated a cause of action, we reverse the trial court's denial of a j.n.o.v. and order judgment in favor of the defendant. The trial court's order of a new trial on damages alone is also reversed.

Order reversed and jurisdiction relinquished.