## Guise v. TNT Enterprises Inc.

154

*Michael A. George,* for plaintiffs.
*John A. Statler,* for defendant TNT Enterprises Inc.
*John A. Wolfe,* for defendant James L. Hill.

SPICER, *P.J.,* October 4, 1995—On February 15, 1995, plaintiffs filed a multiple count complaint against defendants. Shawn C. Guise and Angela L. Hawbaker Guise are the parents of two minor children, Matthew C. Guise and Shawn M. Guise, who will be referred to as "children."

The complaint describes a landlord and tenant relationship between plaintiffs and James C. Hill which began January 1, 1992, and lasted until December 31,

1993. Water for the leased premises was provided by a shallow well, which plaintiffs say was subject to contamination from surface water running into the well. Hill contracted with TNT Enterprises Incorporated to treat the water. A Culligan water treatment system, equipped with an ultraviolet disinfectant light, was installed and serviced by TNT. According to the complaint, plaintiffs dealt directly with TNT thereafter and paid monthly bills.

All plaintiffs began suffering health problems in 1992, consisting of stomach cramps, joint stiffness and other stomach disorders. When they complained to TNT about the condition of the water, TNT indicated that tests showed the water to be high in iron but otherwise safe for human consumption.

When illness persisted in 1993, and Angela developed skin rashes and bumps, plaintiffs arranged for an independent test, the results of which indicated that the water was unfit for human consumption, because of bacterial contamination and turbidity.

Among the causes of action advanced are claims based upon both negligent and intentional infliction of emotional distress. Plaintiffs also seek punitive damages.

Defendants have demurred to various counts, arguing that those particular allegations cannot support an award of damages.

We began by reviewing standards for ruling on demurrer.

The standard for ruling on a demurrer has been described as follows:

*"In reviewing a demurrer, the receiving (sic) court must accept the facts and all reasonable inferences*

*drawn therefrom of the party against whom the motion is granted.* (citation omitted)

*"All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.]* (citation omitted) *The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. (citation omitted) Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it."* (citation omitted) *Gabel v. Cambruzzi,* 532 Pa. 584, 588, 616 A.2d 1364, 1367 (1992). (emphasis added)

However, the court does not accept conclusions as true. *Frankel v. Northeast Land Company,* 391 Pa. Super. 226, 570 A.2d 1065 (1990).

Next, we must venture into the state of the law concerning infliction of emotional distress.

It is still an open question whether Pennsylvania has adopted Restatement (Second) of Torts §46 which deals with infliction of emotional distress by outrageous conduct. A Superior Court panel recently reviewed the subject and found that some panels had upheld the action which others had rejected. *Hart v. O'Malley,* 436 Pa. Super. 151, 647 A.2d 542 (1994). Whatever the status, it is clear that Pennsylvania courts require physical injury, contrary to the Restatement position. *Id.* Physical injury cannot be mere transitory discomfort, but prolonged headaches, upset stomach, involuntary muscle tension, physical pain and nervousness will suffice. *Johnson v. Caparelli,* 425 Pa. Super. 404, 625 A.2d 668 (1993).

Restatement §46 covers two situations. The first, section 46(1), applies to conduct directed at a plaintiff. The second, section 46(2), involves conduct directed

at a third person.[1] It has been suggested that not only must plaintiff be present during the traumatic event, but known by defendant to be present. *Johnson v. Caparelli, supra.*

One panel decision holds that recovery for negligent infliction of emotional distress may lie even if there is a hiatus between defendant's negligence and the traumatic event. In *Love v. Cramer,* 414 Pa. Super. 231, 606 A.2d 1175 (1992), preliminary objections were overruled when plaintiff alleged negligent medical care which resulted in the death of plaintiff's mother seven weeks later. That court held allegations sufficient when negligence constituted the proximate cause of injury, witnessed by plaintiff who was at her mother's side at the time of death.

The basis upon which section 46(2) rests, however, is observation by plaintiff of outrageous conduct inflicted upon a third person. More is required than in the case of negligent infliction.

As in the case of punitive damages, *Rizzo v. Michener,* 401 Pa. Super. 47, 584 A.2d 973 (1990), it is initially for the court to determine if conduct is sufficiently outrageous to justify recovery. *Hackney v. Woodring,* 424 Pa. Super. 96, 622 A.2d 286 (1993); *Johnson v. Caparelli, supra.* If reasonable minds could differ, the issue must be submitted to a jury. *Id.*

It would seem that recovery in negligent infliction of emotional distress is restricted to traumatic events involving persons closely related to plaintiff. *Bloom v. Dubois Regional Medical Center,* 409 Pa. Super. 83, 597 A.2d 671 (1991).

---

1. Since Pennsylvania requires bodily harm as a prerequisite for recovery, there is no need to distinguish between sections 46(2)(a) and 46(2)(b).

It also seems that recovery for negligent infliction is limited to traumatic incidents involving people other than plaintiff.

In describing the development of the law in this area, Superior Court observed that "[t]he tort of negligent infliction of emotional distress has evolved almost exclusively in the context of those who observe injury to close family members and are as a consequence of the shock emotionally distressed." *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 44, 633 A.2d 605, 609 (1993).

If plaintiff is injured as a result of defendant's negligence, he or she may recover for injuries proximately caused by that negligence. Thus, an independent action for emotional distress is unnecessary and duplicative.

Furthermore, the law, as determined by collected cases, is that shock must result from contemporaneous observance of a traumatic event by plaintiff closely related to the victim, with resulting direct emotional impact. *Id.* at 46, 633 A.2d at 610.

This court concludes that plaintiffs cannot maintain a separate action for intentional infliction, under Restatement §46 and that emotional distress related to injuries (illness) suffered by plaintiffs must be viewed as a demand for damages resulting from defendants' negligence.

The question then becomes whether Shawn and Angela are entitled to damages as a result of stress, fear and worry caused by injury (illness) to their children. All cases, of which this court is aware, involved some discrete traumatic event. Given that a delay between causal negligence and trauma is not fatal, *Love v. Cramer, supra,* there is still the need for direct emotional impact. We do not intend to minimize illness, but find it lacks the requirement of immediate shock. Discussions re-

lating to this cause of action emphasize the lack of time and opportunity on the part of a plaintiff to prepare. Illness, although certainly distressing, is usually a long-term experience, comparatively speaking. It certainly was in the case before us. Thus, while Angela and Shawn may recover for fear and emotional distress resulting from their own injuries, they may not do so for fear engendered by injuries suffered by their children.

Punitive damages require outrageous conduct on the part of defendants. Restatement (Second) of Torts §908; *Ruffing v. 84 Lumber Company,* 410 Pa. Super. 459, 600 A.2d 545 (1991). The element of recklessness required has been likened to that required for a crime and the difference between it and negligence is so marked as to amount to a difference in kind. There must be an easily perceptible danger of substantial bodily harm. Restatement *supra,* §500; *Moran v. G. & W.H. Corson Inc.,* 402 Pa. Super. 101, 586 A.2d 416 (1991).

In determining whether punitive damages are justifiable, one must look to the act itself, together with all the circumstances, including the motive of the wrongdoers and the relations between the parties. *Id.*

This last cited case is instructive. A defendant which supplied asbestos products in the sixties was immunized from exemplary damages because: (1) there was no proof defendant knew the hazards of asbestos at that time; and (2) such hazards were generally not well-known at that time.

It is common knowledge that contaminated drinking water can be a serious threat to health. Plaintiffs allege that TNT assured them that the water was potable. We need not decide whether the representations were intentional or negligent. Defendants have not attacked

allegations of fraud on the part of TNT. Thus, any challenges to the demand for punitive damages, mounted by TNT, must fail.

Allegations do not, however, support a claim against Hill. Plaintiffs allege negligence and the breach of the covenant of habitability. While this implied condition of the lease is very important, it implicates no public policy. The breach of a contractual duty, whether pleaded in assumpsit or as a tort, cannot justify punitive damages unless there is also a breach of a duty to society. *Deardorff v. Rife,* 28 A.C.L.J. 217 (1987).

Although we must assume as true allegations that Hill knew well water was unsafe, plaintiff has also averred that Hill contracted with TNT to solve the problem. There is nothing outrageous about this conduct. Facts alleged do not support the conclusion, recited in section 33 of the complaint, that Hill consciously disregarded a high risk that water was unsafe and posed a risk of serious harm to plaintiffs.

The attached order is entered.

## ORDER

And now, October 4, 1995, demurrers to Counts V, VI, XXIII and XXIV are sustained to the extent that those counts purport to plead an action separate and apart from negligence. Allegations shall remain, however, as pleading damages and shall require an answer by defendants. Demurrers to Counts VII, VIII, XV, XVI, XXV, XXVI are sustained and those counts are dismissed. The demurrer to punitive damages is overruled as to TNT Enterprises Inc., but sustained as to James L. Hill. Plaintiffs may file an amendment to their

amended complaint, or a second amended complaint within the next 20 days. If they opt to forego such a pleading, they may file a notice to defendants to file an answer within 20 days. Defendants may file answers within 20 days of such notice or 20 days from the filing of a second amended complaint, if either is filed, and, failing such filing, within 40 days of this order.