## Leonard v. Timlin

C.P. of Lackawanna County, no. 94-Civil-1523.

*Todd J. O'Malley,* for plaintiffs.
*James E. O'Brien* and *John T. Clary,* for defendants.

CORBETT, *J.,* February 3, 1998—

## BACKGROUND

This case comes before the court on motions for summary judgment by both defendants in this matter. When considering a motion for summary judgment we must view the evidence in the light most favorable to the non-moving party. Therefore, we will accept the facts as averred in the briefs submitted by the plaintiffs.

On June 5, 1987, Lisa Marie Leonard gave birth to a stillborn baby girl named Angel. Lisa's mother Dorothy Smith made arrangements by telephone for the burial of Angel with Catherine Klimatis of the Klimatis Funeral Home. Catherine Klimatis advised Mrs. Smith that there was a basic casket and gown that are used for burial and that she (Mrs. Klimatis) would handle everything. Catherine Klimatis assured Mrs. Smith that Angel would be buried in a normal casket that they use for stillborn babies.

Arrangements were made for Angel to be buried in Cathedral Cemetery at the gravesite of Dorothy Smith's father, Philip Gaul. The baby's burial container was to be placed on top of the casket of Philip Gaul. Burial took place sometime in June 1987. In April or May of 1992, Helen Gaul, Dorothy Smith's mother and wife of Philip Gaul, passed away. Helen was to be buried next to the gravesite of her husband. While Joseph Gubanics of the Cathedral Cemetery excavated the site to bury Mrs. Gaul, the earth on top of Philip Gaul's casket caved in so that a portion of the side and the top of his casket were exposed. Mr. Gubanics excavated the excess dirt out of the hole and it was deposited

on a tract of land in the cemetery. Within the dirt deposited were the remains of Angel Leonard.

Some 28 to 35 days later, two boys flying a kite in the cemetery discovered the remains on the dirt pile in a type of cardboard box. The police were contacted and later discovered the circumstances of how the baby's body was unearthed. Gerard and Lisa Leonard were later notified of the unearthing of their baby, and subsequent thereto, filed this action for negligent infliction of emotional distress. Plaintiffs alleged in their complaint that both defendants breached duties they owed to plaintiffs. Originally, both defendants filed for summary judgment on the basis that plaintiffs did not state a cause of action for negligent infliction of emotional distress under the bystander rule. In response, plaintiffs stated that if their case didn't fall under the bystander theory, then in the alternative, defendants breached either a contractual or a fiduciary duty owed to them.

After oral arguments, this court gave all parties an opportunity to file supplemental briefs on the issue of contractual or fiduciary liability. Each party has filed their supplemental briefs, and in consideration thereof and the earlier oral arguments, these motions are ripe for decision.

## DISCUSSION

A motion for summary judgment places the burden upon the moving party. The moving party must show that there exists no genuine issue of any material fact. Pa.R.C.P. Rule 1035.2. The moving party must be entitled to judgment as a matter of law, and the moving party has the burden of proving that no genuine issue of material fact exists. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989). The court must examine the record in the light most favorable to the non-moving

party and resolve all doubts against the moving party. An entry of summary judgment is granted only in cases where the right is clear and free of doubt. *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 644 A.2d 1251 (1994).

Initially, both defendants filed for summary judgment on the basis that plaintiffs could not maintain an action for negligent infliction of emotional distress. "Pennsylvania [law] allows recovery for negligent infliction of emotional distress [in] two circumstances." *Armstong v. Paoli Hospital,* 430 Pa. Super. 36, 55, 633 A.2d 605, 615 (1993). "First, and most commonly, in cases in which there is liability to a bystander, . . . ." *Id.* (citation omitted) To state a cause of action under the bystander theory, plaintiff must show the infliction of emotional distress is reasonably foreseeable when the plaintiff was located near the scene of the accident, when the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, and when the plaintiff and victim were closely related. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). Clearly, the plaintiffs in the case at bar do not fall under the bystander theory.

However, Pennsylvania also recognizes recovery in situations in which there is a contractual or fiduciary duty. *Armstrong, supra.* "A Pennsylvania plaintiff may be able to recover when the infliction of emotional distress is intentional, . . . or sufficiently reckless to amount to intent." *Id.* at 55-56, 633 A.2d at 615. (citation omitted) Since plaintiffs' allegations do not fall under the bystander case, the question presented is whether plaintiffs' complaint demonstrates that defendants owed plaintiffs a pre-existing duty of care as a result of a contractual or fiduciary duty and whether plaintiffs have

presented enough evidence to withstand a motion for summary judgment.

In their supplemental briefs, both defendants argue that if this court were to allow plaintiffs to recover under negligent infliction under either a contractual or fiduciary duty theory, then the floodgates of litigation would open. To avoid opening the floodgates of litigation under the negligent infliction theory, this court will first examine the record to see whether genuine issues of material fact exist as to the existence of a contractual or fiduciary duty. See *Corbett v. Morganstern,* 934 F. Supp. 680, 683 (E.D. Pa. 1996).

First, as to the defendant Catherine Klimatis and the Edward T. Klimatis Funeral Home. Dorothy Smith testified in her deposition that Catherine Klimatis of the Klimatis Funeral Home said the baby would be placed in a standard gown and casket and that she (Mrs. Klimatis) would handle everything. (N.T. Dorothy Smith p. 6.) Mrs. Smith testified that Catherine Klimatis assured her that Angel would be buried in "a normal casket that they use for babies—stillborn babies." (*Id.,* p. 13.) As to the existence of either a fiduciary or contractual relationship, a fiduciary is defined as "a person having a duty, created by his undertaking, to act primarily for another's undertaking, and when used as an adjective, defines fiduciary as relating to or founded upon a trust or confidence." *Corbett, supra.* Clearly, the reliance of the Leonards on the representation made by Catherine Klimatis to Dorothy Smith created a fiduciary duty between the parties. In the alternative, the testimony of Dorothy Smith creates genuine issues of material fact whether such a relationship can be established through the evidence. Thus, summary judgment is not appropriate in this matter.

As to the defendant James C. Timlin, Most Reverend Bishop for the Diocese of Scranton, Trustee for the Cathedral Cemetery. In their supplemental brief, this defendant admitted that plaintiffs "certainly have properly pled a breach of contract claim" (defendant's supplemental brief p. 2), but argue that damages which flow from infliction of emotional distress should be denied. As the court in *Armstrong, supra,* pointed out, recovery for negligent infliction of emotional distress may be had where a contractual or fiduciary duty exists. Since this defendant admits a proper contract action has been pled, there are genuine issues of material fact for trial. Therefore summary judgment is not appropriate in this matter.

## ORDER

And now February 3, 1998, it is hereby ordered and decreed that defendants' motions for summary judgment are denied.