**Raspaldo v. Sacred Heart Hospital**

C.P. of Lehigh County, no. 1999-C-2221 V.

*Marc G. Brecher,* for plaintiffs.
*Katherine B. Kravitz,* for defendants.

FORD, *J.,* November 17, 2000—This is a medical malpractice action whereby the plaintiffs sue as co-administrators of the estate of Alexa Marie Raspaldo, and in their own right.

In their complaint of September 8, 1999, the plaintiffs aver medical negligence in the obstetrical care rendered to plaintiff, Amy L. Raspaldo. Plaintiffs claim that the negligence resulted in the death of the decedent, Alexa Marie Raspaldo, minutes after her birth on May 2, 1999.

On October 6, 1999, the defendants filed preliminary objections to the complaint. We have considered the arguments of counsel of April 11, 1999 and the briefs submitted by counsel. We hereafter discuss each preliminary objection.

## DEMURRER—CORPORATE NEGLIGENCE

Plaintiffs' complaint purports to set forth a cause of action, based upon corporate negligence, against Sacred Heart Ob/Gyn Associates. The demurrer seeks to have this claim dismissed as not setting forth a viable cause of action. The demurrer also addresses what the defendants believe are corporate negligence claims against the individual physicians. However, plaintiffs acknowledge in their response to the preliminary objections that corporate negligence claims are not brought against the individual physicians. Plaintiffs will be held to that assertion. Thus, there are no corporate negligence claims stated against the individual physicians.

Does the law of the Commonwealth recognize a cause of action for corporate negligence against a physician group practice like Ob/Gyn?

When reviewing preliminary objections, the court must accept as true all well-pleaded, material and relevant facts as well as all reasonable inferences drawn therefrom. *Mellon Bank N.A. v. Fabinyi,* 437 Pa. Super. 559, 650 A.2d 895 (1994). When the preliminary objection is a demurrer, the court will resolve the issues solely on the basis of the pleadings and the court will not consider any testimony or other evidence. *Id.* For the court to sustain the preliminary objection, the face of the complaint must reveal that the claim cannot be sustained and that the law will not permit recovery. *Id.* If any doubt exists, the court must overrule the objection. *Id.*

We note the accurate statement of the law pressed by the plaintiffs, namely, that the question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Scarpitti v. Weborg,* 530 Pa. 366, 369, 609 A.2d 147, 148-49 (1992).

The appellate courts have not addressed whether corporate negligence should be extended to physician group practices. Currently, corporate negligence claims may be asserted against only hospitals and health maintenance organizations.

The theory of health care corporate negligence was first adopted in Pennsylvania in the case of *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991). Under the doctrine of corporate negligence, a hospital owes a direct duty to patients to ensure their safety and well

being. *Id.* at 339, 591 A.2d at 707. The duties owed by a hospital to a patient are divided into four categories:

"(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment, . . .

"(2) a duty to select and retain only competent physicians, . . .

"(3) a duty to oversee all persons who practice medicine within its walls as to patient care, . . . and

"(4) a duty to formulate, adopt and enforce adequate rules and policies to insure quality care for the patients, . . . ." *Id.* (citations omitted)

In 1998, our Superior Court extended corporate negligence to health maintenance organizations (HMOs). The court recognized the role HMOs play in providing total health care to their patients. *Shannon* v. *McNulty*, 718 A.2d 828, 835 (Pa. Super. 1998). Although the court found that HMOs do not specifically practice medicine, HMOs are involved in the daily decision making which affects patient care, such as limiting the length of hospital stays, restricting access to specialists, restricting access to therapy, or preventing emergency room care. *Id.* HMOs affect the care received by subscribers. For these actions, HMOs must be held liable when they do not pass the test of medical reasonableness. *Id.* The court stated, "[w]e see no reason why the duties applicable to hospitals should not be equally applicable to an HMO when that HMO is performing the same or similar functions of a hospital." *Id.* at 836.

Counsel have done a fine job in bringing to the attention of the court decisions of other courts of common

pleas which have addressed whether corporate negligence should be extended to private physician practice groups. One case cited was *Anderson v. Orthopaedic Consultants Ltd.,* 77 Lancaster L. Rev. 87 (2000) (Stengel, J.), which sustained preliminary objections and dismissed a claim based on corporate liability against an orthopedic practice. Another was *Oven v. Pascucci,* Lackawanna County no. 99-CV-5279 (June 9, 2000) (Nealon, J.), which overruled preliminary objections and permitted a claim for corporate negligence to proceed against a corporation employing an optometrist and medical doctor at which Lasik® eye surgery was performed. Both cases contain excellent, thorough histories of corporate negligence in the Pennsylvania courts.

This court also previously addressed attempts by plaintiffs to bring corporate negligence claims against physician group practices. See *Tuffiash v. Lehigh Valley Hospital,* 46 Lehigh L.J. 181 (1994) and *Attinello v. St. Luke's Hospital,* Lehigh County no. 1998-C-477V (Ford, J.).

Our reading of *Thompson v. Nason Hospital, supra,* and *Shannon v. McNulty, supra,* leads us to the conclusion that our appellate courts did not intend to extend corporate negligence responsibility to physician group practices.

However, the allegations of paragraph 14 of the complaint lead to the conclusion that Ob/Gyn is more than the typical obstetrics practice. Whether that is supported by actual evidence remains to be seen. Accordingly, because the allegations of the complaint describe Ob/Gyn as more akin to a hospital than a physician group prac-

tice, the claim for corporate negligence against Ob/Gyn survives the demurrer.

Let us see if discovery demonstrates that Ob/Gyn is a typical physician group practice limiting itself to medical care and treatment related to obstetrics and gynecology. On the other hand, if discovery demonstrates that Ob/Gyn played a "gatekeeping role" in the health care of plaintiff, Amy Raspaldo, that it required Amy Raspaldo to commit to a single corporate health care provider as a matter of medical necessity, or that other factors distinguish Ob/Gyn from other physician group practices, perhaps this claim for corporate negligence can proceed.

Our denial of the demurrer should not be interpreted as this court's concluding that theories of corporate negligence can properly be stated against physician group practices. We hold to the contrary. We deny the demurrer so that the plaintiffs have their opportunity to demonstrate that there is something unusual about defendant, Ob/Gyn, which has characteristics closer to a hospital or HMO than a private physician group practice.

## DEMURRER—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff Amy L. Raspaldo attempts to set forth a claim for negligent infliction of emotional distress in the third cause of action. Plaintiff Jose F. Raspaldo attempts to set forth a claim for negligent infliction of emotional distress in the fourth cause of action. The defendants demur to these claims and argue that the complaint fails in not properly setting forth two of the three elements for a negligent infliction of emotional distress claim.

According to the complaint, Mr. Raspaldo was present in the delivery room for a portion of Mrs. Raspaldo's labor and then for the entire delivery. The complaint alleges that a traditional delivery was inappropriate and a Cesarean section should have been performed. It alleges that the plaintiffs witnessed the use of a forceps and vacuum extractor and that these were "improperly placed" in Mrs. Raspaldo's body. The complaint alleges that Mr. and Mrs. Raspaldo were advised during the delivery that the deceased child was in "fetal distress." It also alleges that the plaintiffs witnessed the death of the child 17 minutes after the delivery.

The injuries that Mrs. Raspaldo claims, in her own right, are "severe emotional distress, pain, suffering, causing shock to her nervous system and illness." (Complaint, paragraph 37.) Plaintiff, Mr. Raspaldo, claims injuries of "emotional distress causing shock to his nervous system and illness." (Complaint, paragraph 43.)

The defendants' brief sets forth a rather lengthy, well constructed and, we believe, accurate recitation of when damages may be recovered for negligent infliction of emotional distress. The plaintiffs do not dispute the defendants' exposition.

First, of course, a plaintiff may recover for emotional or mental suffering as an element of damages.

Second, recovery of damages for emotional distress may be obtained where the plaintiff was in the "zone of danger." In these cases, a plaintiff is in personal danger of physical impact because of a negligent force directed at him, and the plaintiff actually fears that a physical impact may occur. *Neiderman v. Brodsky,* 436 Pa. 401,

413, 261 A.2d 84, 90 (1970). No one argues that this is a "zone of danger" case.

Third, recovery is allowed for a person who is "outside the zone of danger" where the plaintiff was a close family member located near the scene of an accident and shock resulted from direct emotional impact from observing a traumatic encounter with a tort-feasor. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). This is often called the "bystander rule."

The plaintiffs, in the third and fourth causes of action, attempt to state claims under this third theory in order to recover for emotional distress that they allegedly experienced as a result of the claimed acts of negligence upon their deceased daughter. Through their demurrer, the defendants challenge the plaintiffs' attempted use of the bystander rule to seek recovery herein.

A first requirement for a claim under the bystander rule is that the plaintiff must be a "close relative" of the person who suffers the precipitating negligent injury. *Love v. Cramer,* 414 Pa. Super. 231, 234, 606 A.2d 1175, 1177 (1992). Plaintiffs satisfy this requirement through their pleading in that they allege that the deceased child was their daughter.

The second requirement is that the plaintiff claiming damages must experience a "sensory and contemporaneous observance" of the precipitating injury to the close relative. *Id.,* 414 Pa. Super. at 234, 606 A.2d at 1177. Plaintiffs satisfy this requirement in their pleading. They personally witnessed the result of the alleged negligence, namely, the death of their child. But they witnessed the events that are alleged to have caused the death. They

were told the child was in fetal distress as they watched the delivery. They saw an alleged improper use of forceps and vacuum. They witnessed an attempt at natural delivery when, according to their complaint, Cesarean section was required. The plaintiffs adequately plead the observation of traumatic events that is necessary under the bystander rule.

Finally, recovery under the bystander rule requires that a plaintiff suffer physical injuries as a result of a defendant's negligence. *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 45, 633 A.2d 605, 609 (1993). As the Superior Court stated in *Armstrong,* "[t]emporary fright, nervous shock, nausea, grief, rage and humiliation if transitory are not compensable harm; but, long continued nausea or headaches, repeated hysterical attacks or mental aberration are compensable injuries. This court applied the Restatement standards to a case in which the plaintiff averred 'headaches, shaking, hyperventilation, nightmares, shortness of breath, lack of control over the bowels, and tightening of the muscles in the neck, back and chest' and found that she had stated a cause of action for negligent infliction for emotional distress when her employer wrongfully coerced her to enter an abusive substance abuse program. *Crivellaro v. Pennsylvania Power & Light,* 341 Pa. Super. 173, 491 A.2d 207 (1985). Relying on comment c to section 436A, a panel of this court held that 'symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and . . . ongoing mental, physical and emotional harm' sufficiently stated physical manifestations of emotional suffering to sustain a cause of

action. *Love v. Cramer,* [*supra.*] Cases which the *Crivellaro* court collected from other jurisdictions cite depression, nightmares, nervousness, insomnia and hysteria as physical symptoms warranting recovery. *Crivellaro,* 341 Pa. Super. at 180, 491 A.2d at 210." *Armstrong,* 430 Pa. Super. at 44-45, 633 A.2d at 609.

The allegations of the complaint in paragraphs 37 and 43, set forth above, list the physical injuries plaintiffs claim they suffered as a result of experiencing the traumatic events occasioned upon their daughter. These allegations are vague. Did the plaintiffs in this case suffer passing physical ailments or were they of a more lasting nature? We cannot tell. However, if legitimate physical injuries were suffered, in the fashion that we have addressed, the plaintiffs are granted the opportunity to amend their complaint to specify them. Accordingly, the demurrer is denied but the plaintiffs will have to amend their complaint within 30 days to set forth what facts exist to sustain causes of action for negligent infliction of emotional distress.

## MOTIONS TO STRIKE OR FOR MORE SPECIFIC PLEADING—AGENCY AND GENERAL AVERMENTS OF NEGLIGENCE

At the argument, counsel for plaintiffs indicated that she had come into possession of additional information so that more specific allegations can be made pertaining to the agents who were allegedly involved on behalf of the named defendants. Accordingly, we strike paragraphs 8, 9, 13(a), 14(a), 15(a), 16(a), and both paragraphs 17(a), with leave to amend within 30 days.

The defendants challenge paragraphs 14(a-d), 15(a-d), 16(a-d), and both paragraphs numbered 17(a-d), because the paragraphs do not set forth, with requisite specificity, the material facts giving rise to the general averments of negligence that are made in these paragraphs. We agree. Accordingly, we strike these paragraphs and provide plaintiffs with the opportunity to amend their pleading within 30 days of our order.

These challenged paragraphs of the complaint make general allegations as to procedures or tasks not performed by the given defendant. In the amended complaint, the plaintiffs should address in what fashion the pertinent defendant failed to or was negligent in not performing the given obligation.